## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF KENTUCKY

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Cambrian Holding Company, Inc., *et al.*,[1] | ) | Case No.  19-51200 (GRS) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Honorable Gregory R. Schaaf |

**ORDER (A) ESTABLISHING BIDDING AND SALE PROCEDURES WITH RESPECT TO THE SALE OF SUBSTANTIALLY ALL ASSETS, (B) AUTHORIZING THE ENTRY INTO A STALKING HORSE AGREEMENT AND THE PROVISION OF STALKING HORSE PROTECTIONS, (C) SCHEDULING AN AUCTION AND SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, AND (D) GRANTING RELATED RELIEF**

Upon consideration of the *Motion for Entry of (I) An Order (A) Establishing Bidding and Sale Procedures with Respect to the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Entry Into a Stalking Horse Agreement and the Provision of Stalking Horse Protections, (C) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof and (D) Granting Related Relief; and (II) An Order Approving the Sale of Such Assets and Granting Related Relief* (the "**Motion**")[2] seeking, pursuant to sections 105, 363 and 365 of the Bankruptcy Code and Rules 2002, 6004, 6006 and 9014 of the Bankruptcy Rules, an order: (a) approving proposed bidding and sale procedures attached as **Annex 1** to this Order (the "**Bidding Procedures**") and related Bid Deadline (as defined below) in connection with the sale or sales (collectively, the "**Sale Transaction**") of substantially all assets of the Debtors

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Cambrian Holding Company, Inc. (8203), Cambrian Coal LLC (3394), Apex Energy, Inc. (3455), C.W. Augering, Inc. (2875), Marshall Resources, Inc. (9735), PLM Holding Company LLC (7427), Bear Branch Coal LLC (0674), Clintwood Elkhorn Mining LLC (6910), Gatliff Coal LLC (5768), Perry County Coal LLC (4382), Ray Coal LLC (0981), Whitaker Coal LLC (8270), Pike-Letcher Land LLC (8952), Premier Elkhorn Coal LLC (8951), Raven Rock Development LLC (1351), Rich Mountain Coal LLC (1974), S.T. & T. Leasing, Inc. (0340), T.C. Leasing, Inc. (7705), and Shelby Resources, LLC (5085).

[2] Capitalized terms used but not defined herein have the meanings given to them in the Motion.

(individually an "**Asset**" and, collectively, the "**Assets**"); (b) authorizing the Debtors, in their discretion, to enter into a potential stalking horse agreement (any such agreement, a "**Stalking Horse Agreement**"), provide a break-up fee  (the "**Break-Up Fee**") and reimbursement of reasonable and documented out-of-pocket fees and expenses (the "**Expense Reimbursement Amount**" and collectively with the Break-Up Fee, the "**Stalking Horse Protections**") related thereto; (c) approving the date, and form and manner of notice of an auction of the Assets (the "**Auction**") and related Sale Hearing, including the form and manner of notices attached to the Motion as **Exhibit B** (the "**Auction and Hearing Notice**"); (d) establishing procedures for the assumption and assignment of executory contracts and unexpired leases (the "**Assigned Contracts**") in connection with the Sale Transaction, including notice of proposed cure amounts (the "**Assignment Procedures**"), and approving the form and manner of notice of the proposed assumption and assignment of Assigned Contracts in the form attached to the Motion as **Exhibit C** (the "**Assumption/Assignment Notice**"); and (e) granting certain related relief as described in the Motion; and the Bankruptcy Court having considered the statements of counsel and the evidence presented at the hearing on the Motion;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Bankruptcy Court has jurisdiction over this matter and over the property of the Debtors and their respective bankruptcy estates pursuant to 28 U.S.C. §§ 157 and 1334 and may enter a final order on the Motion consistent with Article III of the United States Constitution. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The Debtors have demonstrated a compelling and sound business justification for the Bankruptcy Court to enter this Order and thereby (i) approve of the Bidding Procedures; (ii) set the dates of the Bid Deadline, Auction (if needed) and Sale Hearing; (iii) establish notice

procedures and approve the forms of notice; and (iv) approve the procedures related to assumption and assignment of the Assigned Contracts.

      C.      If payable pursuant to the terms and procedures hereof and subject to the rights of any objectors pursuant to this Order, the Debtors have demonstrated and proven to the satisfaction of this Court that providing the Stalking Horse Protections to a Stalking Horse Bidder represents a prudent exercise of the Debtors' business judgment.

      D.      The Bidding Procedures and the Assignment Procedures are reasonable and appropriate. The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Assets. As such, the Bidding Procedures are supported by, and constitute a proper exercise of, the Debtors' business judgment.

      E.      If payable pursuant to the terms and procedures hereof and subject to the rights of any objectors pursuant to this Order, the Stalking Horse Protections, as approved by this Order, are fair and reasonable and provide a benefit to the Debtors' estates and creditors.

      F.      If payable pursuant to the terms and procedures hereof and subject to the rights of any objectors pursuant to this Order, the payment of the Stalking Horse Protections, under this Order (or any subsequent order of this Court) and upon the conditions set forth herein and in the Bidding Procedures, is: (i) an actual and necessary cost of preserving the Debtors' estates, within the meaning of sections 503(b) and 507(a) of the Bankruptcy Code; (ii) reasonably tailored to encourage, rather than hamper, bidding for the Assets, and, therefore, a benefit to the Debtors' estates and creditors and all parties in interest herein; and (iii) reasonable and appropriate under the circumstances.

      G.      The proposed notice of the Auction, the Sale Hearing, the Bidding Procedures (including, without limitation, the Stalking Horse Protections), and the proposed treatment of the

Assigned Contracts, as set forth in the Motion and this Order, are appropriate and sufficient and are reasonably calculated to provide all interested parties with timely and proper notice thereof, and no other or further notice shall be required in connection with these matters or the proposed Sale Transaction.

H.      Good and sufficient notice of the relief sought in the Motion and granted herein has been given under the circumstances, and no further notice of such matters is required. A reasonable opportunity to object, or to be heard, regarding the relief requested in the Motion and granted herein was afforded to all interested persons and entities.

I.      The Assumption/Assignment Notice and the Successful Bid Notice are reasonably calculated to provide each counterparty to the Assigned Contracts with proper notice of its potential assumption and assignment, any cure amounts, if any, relating thereto, and the Assignment Procedures.

J.      Entry of this Order is in the best interests of the Debtors and their estates, creditors and interest holders and all other parties-in-interest.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED.

2.      All objections to the entry of this Order or to the relief provided herein that have not been withdrawn with prejudice, waived, resolved, or settled are hereby denied and overruled on the merits with prejudice.

3.      The Bidding Procedures, attached hereto as **Annex 1**, are hereby approved in all respects and will govern all bids and bid proceedings relating to the Assets. The Debtors and their professionals and agents are authorized to take any and all actions necessary or appropriate to implement the Bidding Procedures. The failure to specifically include a reference to any

particular provision of the Bidding Procedures in this Order will not diminish or impair the effectiveness of such provision.

4.      The deadline for submitting a Qualified Bid shall be **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**"). The Bid Deadline may be modified as set forth in the Bidding Procedures.  The Debtors shall promptly provide copies of all bids to: (i) the DIP Lender, the Pre-Petition ABL Agent, the Pre-Petition Term Lenders, or their designees, assignees, or successors, as those terms are defined in the *Final Order Authorizing (A) Secured Post-Petition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364* (Docket No. 283) (the "**Final DIP Order**"), including their counsel and financial advisors; and (ii) counsel and financial advisors to the Creditors' Committee (each a "**Consultation Party**" and, collectively, the "**Consultation Parties**"). If a Consultation Party is a Qualified Bidder, the Debtors may provide such Consultation Party with a copy of all bids promptly after the Bid Deadline, unless such Consultation Party has submitted a Qualified Bid.

5.      Any Auction, if necessary, shall take place at the offices of counsel to the Debtors, Frost Brown Todd LLC, 250 West Main Street, Suite 2800, Lexington, Kentucky 40507-1749, at **9:00 a.m. (prevailing Eastern Time) on September 18, 2019**, or such other time and place as the Debtors, after consultation with the Consultation Parties, may determine. The Auction shall be conducted openly and shall be transcribed as described in greater detail in the Bidding Procedures. The Auction may be rescheduled as set forth in the Bidding Procedures.

6.      At the request of the Debtors, each bidder participating at the Auction (as determined in accordance with this Order and the Bidding Procedures) shall be required to confirm in writing at the Auction that (a) it has not engaged in any conduct of the type described

in section 363(n) of the Bankruptcy Code with respect to the bidding process and (b) its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder.

7.      The Bankruptcy Court will conduct the Sale Hearing on **September 24, 2019 at 9:00 a.m. (prevailing Eastern Time)** or as soon thereafter as counsel and interested parties may be heard, at which time the Bankruptcy Court shall consider approval of the Sale Transaction to the Successful Bidder and the entry of the Sale Order. The Debtors in their discretion, and in consultation with the Consultation Parties, may adjourn or reschedule the Sale Hearing without notice, including by (a) an announcement of such adjournment at the Sale Hearing or at an Auction or (b) the filing of a notice of adjournment with the Bankruptcy Court prior to the commencement of the Sale Hearing (which may be included in a hearing agenda letter).

8.      Within two (2) business days after entry of this Order, the Debtors shall serve the proposed Auction and Hearing Notice substantially in the form attached to the Motion as **Exhibit B** (as modified by this Order) by overnight mail to those parties on the Master Service List maintained by the Debtors' claims and noticing agent at https://dm.epiq11.com/case/CDC/info.

9.      The Debtors have until **August 19, 2019**, unless otherwise extended by agreement between the Debtors and the Consultation Parties (the "**Stalking Horse Deadline**") to (a) select a Stalking Horse Bidder and enter into an Asset Purchase Agreement with, and provide Stalking Horse Protections to, such Stalking Horse Bidder (the "**Stalking Horse Agreement**"), subject to the terms below, and (b) file any such Stalking Horse Agreement with the Court and serve a copy by overnight mail on the Master Service List established by this Court's *Order Granting Motion to Establish Notice Procedures and Master Service List* (Docket No. 83). Objections to the Debtors' entry into a Stalking Horse Agreement, including any Stalking Horse Protections, shall be filed on or before **August 23, 2019 at 4:00 p.m. (prevailing Eastern Time)**. If an objection

to the Stalking Horse Agreement is timely filed, the parties may contact the Court and request an expedited hearing on the Debtors' entry into the Stalking Horse Agreement. If no objection is filed to the Stalking Horse Agreement, at the end of the objection period set forth herein, the Debtors' entry into the Stalking Horse Agreement (including any Stalking Horse Protections) will be deemed approved without further order of the Court.

10.    Subject to the terms of this Order and the rights of any objector pursuant to the terms hereof, in connection with entering into a Stalking Horse Agreement, the Debtors may grant, in their discretion, a Break-Up Fee in an amount not to exceed 3% of the purchase price included in the Stalking Horse Agreement and Expense Reimbursement not to exceed $500,000 to the Stalking Horse Bidder, and to establish minimum initial and overbid increments in appropriate amounts, in the Debtors' discretion, subject to consultation with the Consultation Parties. In the event that a sale is consummated pursuant to a transaction other than with any approved Stalking Horse Bidder (an "**Alternate Transaction**"), then subject to the terms of this Order or any other order of the Court entered in connection with the Stalking Horse Protections, the Debtors shall pay the Stalking Horse Protections to the Stalking Horse Bidder, if there is one, by wire transfer of immediately available funds from the proceeds of the applicable Alternate Transaction immediately upon the consummation thereof.

11.    All objections to approval of the Sale Transaction, including the sale of the Assets free and clear of liens, claims, encumbrances and interests pursuant to section 363(f) of the Bankruptcy Code, and the form of the Sale Order must be in writing, state the basis of such objection with specificity, comply with the Bankruptcy Rules and be filed with this Court and served so as to be received by those parties on the Master Service List maintained by the Debtors' claims and noticing agent at https://dm.epiq11.com/case/CDC/info (collectively, the

"**Objection Notice Parties**") on or before **September 20, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"). For the avoidance of doubt, the rights of parties to object to the Sale Transaction and form of Sale Order are fully preserved to the Sale Objection Deadline and nothing in this Order including, without limitation, any approval of a Stalking Horse Agreement, shall abrogate or otherwise modify those rights.

12.   Following the designation of a Successful Bid, the Debtors shall file a notice of the Successful Bid, along with copies of the asset purchase agreement associated with the Successful Bid and Sale Order (a "**Successful Bid Notice**"). The Successful Bid Notice shall be filed with the Court after designation of a Successful Bid.

13.   Any Sale Transaction Fee[3] due to Jefferies LLC ("**Jefferies**") as a result of the closing of any Sale Transaction shall be paid and/or segregated and escrowed from the proceeds of such Sale Transaction, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders for the exclusive benefit of Jefferies, prior to any other use or distribution of such proceeds. If any Sale Transaction is the result of a successful credit bid without a cash component sufficient to pay any Sale Transaction Fee due to Jefferies in full, then any resulting unpaid portion of the Sale Transaction Fee due to Jefferies shall be immediately paid to Jefferies and/or segregated and escrowed at the closing of such Sale Transaction from the available cash collateral of the applicable credit bidder; provided; however, that if there is not sufficient cash collateral of the applicable credit bidder to pay the unpaid portion of such Sale Transaction Fee in full, or any portion thereof, then the successful bidder shall immediately pay the unpaid portion of such Sale Transaction Fee to Jefferies and/or segregate and escrow such unpaid portion of the Sale Transaction Fee at the closing of such Sale Transaction.

---

[3] Capitalized terms used in this paragraph but not otherwise defined in this Order shall have the meanings ascribed to such terms in the engagement letter between the Debtors and Jefferies, a copy of which is attached to the Debtors' application to retain Jefferies (Docket No. 157), or the order approving the same (Docket No. 273), as applicable.

Notwithstanding the foregoing, this Paragraph 13 shall not apply to any credit bidder who credit bids solely on equipment and such credit bid is less than $1,000,000.

14.     A party that fails to timely file an objection to a proposed sale by the Objection Deadline shall be (a) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable Sale Transaction and (b) deemed to have consented to entry of the Sale Order and consummation of the Sale Transaction, including, without limitation, for purposes of section 363(f) of the Bankruptcy Code.

15.     As soon as practicable, but no later than 14 business days after entry of this Order, the Debtors shall file a schedule of cure obligations (the "**Cure Schedule**") for executory contracts and unexpired leases that they have identified as potential Assigned Contracts. The Cure Schedule shall include (a) a summary description containing the name of the contract counterparty of each executory contract and unexpired lease that the Debtors may assume and assign to potential buyer; and (b) the amount, if any, the Debtors believe would be necessary to cure defaults under such agreements pursuant to sections 365(b)(1) and 365(f)(2)(A) of the Bankruptcy Code (the "**Cure Costs**"). Listing an executory contract on the Cure Schedule does not mean that the Successful Bidder ultimately will identify such agreement as an Assigned Contract in an asset purchase agreement. In addition, inclusion of any document in the Cure Schedule does not constitute, and is not deemed to be, a determination or admission by the Debtors or any Successful Bidder that such document is an executory contract or unexpired lease within the meaning of the Bankruptcy Code. The Cure Schedule may be amended or supplemented by the Debtors from time to time. For the avoidance of doubt, all rights of a counterparty to an Assigned Contract under section 365 of the Bankruptcy Code are fully reserved to the applicable objection deadlines as provided by this Order.

16.     The Debtors shall serve a copy of the Cure Schedule (or amended Cure Schedule, as applicable), together with the Assumption/Assignment Notice in substantially the form attached to the Motion as **Exhibit C** (as modified by this Order), on each of the non-debtor counterparties to the agreements listed on the Cure Schedule by first class mail on the date that the Cure Schedule is filed with the Bankruptcy Court. If the Debtors amend the Cure Schedule to remove or add additional executory contracts and unexpired leases or amend a particular Cure Cost, the Debtors shall serve a copy of the amended Cure Schedule, together with the Assumption/Assignment Notice, on each of the non-debtor counterparties to the agreements listed on the amended Cure Schedule by first class mail.

17.     Objections to: (i) the Cure Costs set forth on the Cure Schedule must be in writing, state the basis of such objection with specificity including, without limitation, any supporting documentation to support the cure amount and be filed with the Bankruptcy Court and actually received by the Objection Notice Parties on or before **September 9, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure Objection Deadline**"); or (ii) the assumption and assignment of any Assigned Contract must be in writing, state the basis of such objection with specificity, and be filed with the Bankruptcy Court and actually received by the Objection Notice Parties on or before **September 16, 2019 at 2:00 p.m. (prevailing Eastern Time)** (the "**Assumption and Assignment Objection Deadline**"). If the Debtors file an amended Cure Schedule, the Cure Objection Deadline shall be extended to the earlier of: (i) three (3) business days from the filing of an amended Cure Schedule; and (ii) the Sale Hearing.

18.     Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs, the Cure Costs set forth in the Cure Schedule shall be binding upon the non-debtor

counterparties to the Assigned Contracts for all purposes in these chapter 11 cases and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced). Absent a timely and properly filed and served objection, all non-debtor counterparties to the Assigned Contracts shall be forever (a) barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; and (b) barred, estopped and permanently enjoined from asserting or claiming against the Debtors, any Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contract or that there is any objection or defense to the assumption and assignment of such Assigned Contract.

19.     If a non-debtor counterparty to an Assigned Contract files an objection asserting a cure amount higher than the proposed Cure Costs (any such amount, a "**Disputed Cure Amount**"), the following procedures will govern the resolution of the Disputed Cure Amount: (a) to the extent that the parties (including, if applicable, a Successful Bidder) are able to consensually resolve the Disputed Cure Amount prior to the Sale Hearing, the Debtors shall promptly provide the Consultation Parties with notice and an opportunity to object to such proposed resolution and, if no objection, such resolved Disputed Cure Amount shall be paid upon closing of the Sale Transaction; or (b) to the extent that the parties are unable to consensually resolve the dispute prior to the Sale Hearing or any of the Consultation Parties raises an objection, the Debtors may, after consulting with the Consultation Parties, (i) assume

the applicable Assigned Contract prior to the resolution of the Disputed Cure Amount; *provided, however*, that the undisputed portion of the Cure Costs shall be paid upon the closing of the Sale Transaction and the Successful Bidder shall escrow cash in an amount sufficient to indefeasibly pay in full the Disputed Cure Amount asserted by the applicable counterparty to the Assigned Contract (or such lesser amount as may be agreed to by the applicable counterparty to the Assigned Contract), or (ii) adjourn their request to assume the Assigned Contract pending resolution of the Disputed Cure Amount. For the avoidance of doubt, parties to a Disputed Cure Amount shall be allowed to request a hearing before this Court on such Disputed Cure Amount by serving a notice of hearing fourteen (14) days prior to such hearing. Upon resolution of a Disputed Cure Amount under subsection (b) of this Paragraph 19, such resolved Disputed Cure Amount shall be paid within 1 (one) business day by the Successful Bidder.

20.     The form of the Auction and Hearing Notice and the Assumption/Assignment Notice, attached to the Motion as **Exhibits B**, and **C** respectively (as modified by this Order), and the manner of service or publication described herein (a) are hereby approved in all respects and (b) are determined to be appropriate and sufficient for all purposes. The Debtors shall be permitted to make non-substantive revisions to the Auction and Hearing Notice and the Assumption/Assignment Notice, consistent with the Bidding Procedures and this Order.

21.     No other or further notice of the Motion, this Order, the Bidding Procedures, the sale of the Assets, the Auction, the Successful Bidders, the assumption and assignment of Assigned Contracts, or the Sale Hearing shall be required.

22.     All parties (whether or not Qualified Bidders) that participate in the bidding process (including any Auction) shall be deemed to have knowingly and voluntarily (a) consented to the entry of a final order by this Court in connection with the Motion or this Order

(including any disputes relating to the bidding process, the Auction and/or the Sale Transaction) to the extent that it is later determined that the Bankruptcy Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution and (b) waived any right to jury trial in connection with any disputes relating to the any of the foregoing matters.

23.     This Order shall be immediately effective and enforceable upon its entry, and nothing in Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 (to the extent applicable) shall cause a stay hereof.

24.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

25.     This Court shall retain exclusive jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

TENDERED BY:

/s/ Patricia K. Burgess
Patricia K. Burgess
**FROST BROWN TODD LLC**
250 West Main Street, Suite 2800
Lexington, Kentucky 40507
Tel:  (859) 231-0000
Fax: (859) 231-0011
E-mail: pburgess@fbtlaw.com

-and-

Ronald E. Gold (admitted *pro hac vice*)
Douglas L. Lutz (admitted *pro hac vice*)
A.J. Webb (admitted *pro hac vice*)
**FROST BROWN TODD LLC**
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Tel:  (513) 651-6800
Fax:  (513) 651-6981
E-mail:  rgold@fbtlaw.com
          dlutz@fbtlaw.com
          awebb@fbtlaw.com

**ATTORNEYS FOR DEBTORS
AND DEBTORS-IN-POSSESSION**

- 14 -

The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and
electronically entered by the Clerk in the official record of this case.



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Wednesday, August 7, 2019**
 **(grs)**

**Annex 1** to Bidding Procedures Order

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Cambrian Holding Company, Inc., *et al.*,[1] | ) | Case No.  19-51200 (GRS) |
| | ) | |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | Honorable Gregory R. Schaaf |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' ASSETS[2]**

By motion dated July 12, 2019 (the "**Motion**"), the Debtors requested approval of (i) a process and procedures for, and authority to implement, a sale or sales of substantially all of the Debtors' Assets and (ii) the authority to enter into a Stalking Horse Agreement and to provide Stalking Horse Protections.

On August __, 2019 the Bankruptcy Court entered an order (the "**Bidding Procedures Order**") (Docket No. ____), which, among other things, authorized the Debtors to market and sell the Assets pursuant to the Bidding Procedures set forth below.

**Any interested bidder should contact, as soon as practical, the
Debtors' investment banker ("Jefferies") as set forth below:**

**Jefferies LLC, 520 Madison Avenue, New York, New York 10022, Attn: Leon Szlezinger
(lszlezinger@jefferies.com) and Johnston Suter (jsuter@jefferies.com)**

These Bidding Procedures describe, among other items, (a) the Assets offered for sale, (b) the manner in which bidders and bids become Qualified Bidders and Qualified Bids (each as defined below), respectively, (c) the conduct of the Auction (as defined below), if necessary, (d) the selection of Successful Bidder and (e) the Bankruptcy Court approval of the sale(s) of the Assets to the Successful Bidder.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Cambrian Holding Company, Inc. (8203), Cambrian Coal LLC (3394), Apex Energy, Inc. (3455), C.W. Augering, Inc. (2875), Marshall Resources, Inc. (9735), PLM Holding Company LLC (7427), Bear Branch Coal LLC (0674), Clintwood Elkhorn Mining LLC (6910), Gatliff Coal LLC (5768), Perry County Coal LLC (4382), Ray Coal LLC (0981), Whitaker Coal LLC (8270), Pike-Letcher Land LLC (8952), Premier Elkhorn Coal LLC (8951), Raven Rock Development LLC (1351), Rich Mountain Coal LLC (1974), S.T. & T. Leasing, Inc. (0340), T.C. Leasing, Inc. (7705), and Shelby Resources, LLC (5085).

[2] Capitalized terms not otherwise defined herein have the meanings given to them in the Bidding Procedures Order (as defined below).

-1-

1.      **Important Dates**

The Debtors will:

(a)      have until August 19, 2019, unless otherwise extended by agreement between the Debtors and the Consultation Parties (the "**Stalking Horse Deadline**") to select one or more Stalking Horse Bidders and enter into asset purchase agreements with, and provide Stalking Horse Protections to, the Stalking Horse Bidder (collectively, the "**Stalking Horse Agreement**"), subject to the terms below

> (i)      promptly will file any such Stalking Horse Agreement with the Bankruptcy Court; and

> (ii)      serve a copy by overnight mail on the Master Service List established by this Court's *Order Granting Motion to Establish Notice Procedures and Master Service List* (Docket No. 83);

(b)      continue soliciting interest from and assisting Potential Bidders (as defined below) in conducting their respective due diligence investigations and accept bids seeking qualification as Qualified Bids (as defined below) until **September 11, 2019 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**") or thereafter as permitted herein, including, for the avoidance of doubt, in the event the Debtors do not designate a Stalking Horse Bidder prior to the Stalking Horse Deadline; and

(c)      also do the following if they receive more than one Qualified Bid – (i) negotiate with the Qualified Bidders (as defined below) in preparation for the Auction; (ii) conduct the Auction at the offices of counsel to the Debtors, Frost Brown Todd LLC, 250 West Main Street, Suite 2800, Lexington, Kentucky 40507-1749, at **9:00 a.m. (prevailing Eastern Time) on September 18, 2019** or such other time or such other place as the Debtors, after consultation with the Consultation Parties, may determine; and (iii) select, at the conclusion of the Auction, in their sole discretion, but after consultation with the Consultation Parties, which bidder or bidders have provided the highest and best offer(s) for the Assets in a single or multiple lots (each, a "**Successful Bidder**").

2.      **Authority to Enter into Stalking Horse Agreement**

Subject to the rights of parties to object as provided in the Bidding Procedures Order, the Bidding Procedures Order provides the Debtors may accept a stalking horse bid (the "**Stalking Horse Bid**") and execute a Stalking Horse Agreement with a Stalking Horse Bidder in connection with the proposed sale of the Assets. The Debtors may enter into a Stalking Horse Agreement at any time up to the Stalking Horse Deadline as provided by these Bidding Procedures and the Bidding Procedures Order, or thereafter with leave of Court and notice of hearing.

-2-

Upon the mutual execution and delivery of a Stalking Horse Agreement with a Stalking Horse Bidder, such Stalking Horse Agreement will be a Qualified Bid, and the Stalking Horse Bidder will be a Qualified Bidder. The Debtors will provide notice of such Stalking Horse Bidder and Stalking Horse Agreement as described above and in the Bidding Procedures Order.

### 3.    **Potential Stalking Horse Protections if a Stalking Horse Bidder Is Designated**

The Bidding Procedures Order provides that the Debtors may, if they execute a Stalking Horse Agreement and it is approved or deemed approved, and subject to the terms of the Bidding Procedures Order or any subsequent order of the Bankruptcy Court, provide in their discretion the following Stalking Horse Protections:

(a)    a break-up fee of up to 3% of the purchase price contemplated in the Stalking Horse Agreement (the "**Break-Up Fee**") and reimbursement of reasonable and documented out-of-pocket fees and expenses in an amount up to $500,000 (the "**Expense Reimbursement Amount**"); and

(b)    the establishment, by the commencement of the Auction, of minimum initial and overbid increments in appropriate amounts, in the Debtors' discretion, subject to consultation with the Consultation Parties.

### 4.    **Participation Requirements**

(a)    **Interested Parties**:

To participate in the Bidding Process, each interested person or entity (each an "**Interested Party**") should deliver the following (unless previously delivered) non-binding documents to counsel to the Debtors and Jefferies so as to be received no later than **4:00 p.m. (prevailing Eastern Time) on August 7, 2019** (unless such date is otherwise extended in the sole discretion of the Debtors):

(i)    an executed confidentiality agreement in form and substance reasonably satisfactory to the Debtors;

(ii)    a statement and other factual support demonstrating to the Debtors' reasonable satisfaction, that the Interested Party has a bona fide interest in purchasing the Assets (or some subset thereof), to include a non-binding summary of the Assets the Interested Party has a bona fide interest in purchasing and indicative, non-binding purchase price for such Assets; and

(iii)    sufficient information, as defined by the Debtors, to allow the Debtors to determine that the Interested Party has the financial wherewithal and any required internal corporate, legal or other authorizations to close the Sale Transaction, including, but not limited to, current audited financial statements of the Interested Party (or such other form of financial disclosure acceptable to the Debtors in their discretion).

-3-

If the Debtors determine, after receipt of the items identified above, that an Interested Party has a bona fide interest in the Assets, no later than two (2) business days after the Debtors make that determination and have received all of the materials required above, such Interested Party will be deemed a "**Potential Bidder**" and the Debtors will deliver to such Potential Bidder the following items: (i) an electronic copy of any Stalking Horse Agreement, if one exists, and (ii) access information for the Debtors' confidential electronic data room concerning the Assets (the "**Data Room**"). The Debtors reserve the right (in their sole discretion after consultation with the Consultation Parties) to determine whether an Interested Party has satisfied the above participation requirements such that it is eligible to be a Potential Bidder. For the avoidance of doubt, failure of an Interested Party to submit the documents referenced in this Paragraph 4.(a) shall not preclude the Interested Party from submitting a Qualified Bid.

(b) **Due Diligence**

Until the Bid Deadline (as defined below), in addition to access to the Data Room, the Debtors will provide any Potential Bidder such due diligence access or additional information a Potential Bidder requests and that the Debtors determine to be reasonable and appropriate under the circumstances. All additional due diligence requests shall be directed to Jefferies. The Debtors, with the assistance of Jefferies, will coordinate all reasonable requests for additional information and due diligence access from Potential Bidders. In the event that any such due diligence material is in written form and has not previously been provided to any other Potential Bidder, the Debtors will simultaneously provide such materials to all Potential Bidders and any Stalking Horse Bidder, if one exists.

Unless otherwise determined by the Debtors, the availability of additional due diligence to a Potential Bidder will cease if (i) the Potential Bidder does not become a Qualified Bidder, from and after the Bid Deadline; or (ii) the bidding process is otherwise terminated.

5. **Qualified Bids**

Each offer, solicitation or proposal by a Potential Bidder must satisfy each of the following conditions to be deemed a "Qualified Bid," and for the Potential Bidder to be deemed a "Qualified Bidder."

(a) **Bid Deadline**

A Potential Bidder who desires to be a Qualified Bidder must deliver the Required Bid Documents (as defined below) so as to be received by the Bid Deadline, to Jefferies (at the address listed above), with copies to (i) counsel for the Debtors; and (ii) the Consultation Parties, unless one of them has submitted a Bid. The Debtors (in consultation with the Consultation Parties) may extend the Bid Deadline in their sole discretion. If the Debtors extend the Bid Deadline, the Debtors will promptly notify all Potential Bidders who have signed a confidentiality agreement of such extension.

(b)   **Bid Requirements**

(1) All bids must include the following (the "Required Bid Documents"):

(i)   a letter stating that the bidder's offer is irrevocable until consummation of a transaction involving any other bidder for the Assets identified in such offer (or a subset thereof);

(ii)   a duly authorized and executed purchase agreement, including the purchase price for the Assets (or a subset thereof), and the liabilities and obligations being assumed, including, without limitation, all cure amounts necessary as required by section 365 of the Bankruptcy Code, together with all exhibits and schedules redlined to show those amendments and modifications to the Stalking Horse Agreement (if any) and to the proposed Sale Order; and

(iii)   written evidence of an unconditional commitment for financing from a reputable financing institution, documented to the satisfaction of the Debtors, or other evidence of ability to consummate the proposed transaction without financing, that is satisfactory to the Debtors.

(2) A bid will be only considered if the bid:

(i)   identifies the Assets (or a subset thereof) to be purchased and the executory contracts and unexpired leases to be assumed and assigned;

(ii)   states that all necessary filings under applicable regulatory, antitrust and other laws or regulations will be made, pursuant to the terms and conditions in the applicable asset purchase agreement or other bid documents, and that payment of the fees associated with such filings will be made by the Potential Bidder;

(iii)   with respect to the purchase of coal mining properties, the bid (A) contemplates that the Potential Bidder will (1) identify (by permit number) and take transfer of, or obtain overlapping permits with respect to, the Debtors' applicable mining permits, (2) agree to assume all reclamation obligations with respect to any such permits, and (3) replace the Debtors' financial assurance and/or reclamation surety bonds that are associated with such permits; and (B) provides evidence demonstrating to the Debtors that the Potential Bidder (1) is capable of taking transfer of such permits or obtaining such overlapping permits (including verification that the Potential Bidder is not "permit blocked" under the federal Surface Mining Control and Reclamation Act or any analogous state laws and will not be "permit blocked" as of the time of transfer or

-5-

issuance) and (2) has or will have sufficient financial resources necessary to obtain or replace any financial assurance and/or reclamation surety bonds that are associated with such permits. The applicable Bidder shall also provide all such evidence submitted (subject to any applicable confidentiality agreements that may be entered into) to surety providers of the relevant mines to be acquired, and the Debtors may consult with such surety companies with respect to such Bidder's ability to open or take transfer of the permits and obtain assignment of or replace surety bonds, each as required by the applicable regulators;

(iv)    sets forth the consideration for the Assets to be purchased (or a subset thereof), identifying separately any cash and non-cash components, and the executory contracts and unexpired leases to be assumed and assigned;

(v)     is reasonably likely (based on availability of financing, antitrust or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time-frame reasonably acceptable to the Debtors, in consultation with the Consultation Parties, and, if a Stalking Horse Bid has been selected by the Debtors, each Bid seeking to acquire all of the Debtors' Assets that are the subject of the Stalking Horse Bid must have a Purchase Price that in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a monetary value equal or greater than the aggregate cash consideration, assumed liabilities, and other non-cash consideration contemplated by the Stalking Horse Bid, plus the Stalking Horse Protections, plus an amount of cash or cash equivalents as determined by the Debtors at the Auction, after consultation with the Consultation Parties (collectively, the "**Minimum Overbid**"); or at a minimum, each Bid seeking to acquire individual assets or combinations of assets that are less than all of the Debtors' assets (each a "**Partial Bid**") must have a Purchase Price that in the Debtors' reasonable business judgment, after consultation with the Consultation Parties, has a value, individually or in conjunction with one or more other Bids, that satisfies the criteria for being a Qualified Bid. Any Partial Bid must include an allocation of the Purchase Price[3] with respect to the applicable mines such Partial Bid seeks to acquire and state whether the Bidder is willing to purchase any of the Assets included in the Bid individually, and if so, the Bid must state the price the Bidder would pay for each such Asset.

---

[3] Such allocation is not binding on the Debtors or the Consultation Parties, and is subject to review and determination, if necessary, at the Sale Hearing.

(vi)    is not conditioned on obtaining financing or on the outcome of unperformed due diligence or corporate, stockholder or internal approval;

(vii)    provides evidence satisfactory to the Debtors, in their sole discretion, of the bidder's financial wherewithal and operational ability to consummate the transaction and satisfy its adequate assurance of future performance requirement with respect to any executory contract or unexpired lease to be assigned to the potential bidder;

(viii)    is irrevocable until the Debtors have consummated a transaction with the Successful Bidder(s) (as defined below) or the Alternate Bidder(s) (as defined below), as applicable;

(ix)    to the extent the bid is for all of the Assets, is accompanied by a deposit by wire transfer to an escrow agent selected by the Debtors (the "**Deposit Agent**") equal to 10% of the total cash consideration (including but not limited to, the amount being paid for cure costs under Bankruptcy Code Section 365), and to the extent the bid is for any subset of the Assets, is accompanied by a deposit by wire transfer to the Deposit Agent of an amount equal to the higher of 10% of the cash consideration set forth in connection with such bid or $100,000 (any such deposit, a "**Good Faith Deposit**") and includes a completed IRS Form W-8BEN-E or W-9 (as applicable);

(x)    sets forth the representatives who are authorized to appear at the Auction and act on behalf of the contemplated transactions;

(xi)    indicates that the bidder will not seek any transaction or break-up fee, expense reimbursement amount, substantial contribution claim or similar type of payment;

(xii)    includes evidence of the Qualified Bidder's commitment to and ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Qualified Bidder's ability to perform in the future under the executory contracts and unexpired leases proposed in its bid to be assumed by the Debtors and assigned to the Qualified Bidder, in a form that will permit the immediate dissemination of such evidence to the counterparties to such contracts and leases, as well as the Qualified Bidder's ability to indefeasibly pay in full all monetary cure amounts as required by section 365 of the Bankruptcy Code and a list of any contracts, leases, or other agreements, if any, included in the proposed bid that the Qualified Bidder asserts are not subject to section 365 of the Bankruptcy

-7-

Code. If requested by notifying counsel for the Debtors via email (pburgess@fbtlaw.com, rgold@fbtlaw.com, dlutz@fbtlaw.com, and awebb@fbtlaw.com) and providing contact information to counsel for the Debtors, such evidence shall be provided to the applicable counterparties of such contracts and leases or their legal advisors by September 13, 2019 at 2:00 p.m. via email;

(xiii)  must be reasonably likely (based on availability of financing, antitrust, or other regulatory issues, experience, and other considerations) to be consummated, if selected as the Successful Bid, within a time frame acceptable to the Debtors, after consultation with the Consultation Parties, which time frame shall include a closing by no later than October 9, 2019 (the "**Outside Closing Date**");

(xiv)  must contain evidence that the Qualified Bidder has obtained authorization or approval from its board of directors (or a comparable governing body acceptable to the Debtors, in consultation with the Consultation Parties) with respect to the submission of its Bid and the consummation of the transactions contemplated in such Bid;

(xv)  includes an acknowledgment that the Potential Bidder has not engaged in any collusion with respect to the Bidding Process and its bid is a good faith bona fide offer that it intends to consummate if selected as the Successful Bidder; and

(xvi)  is received on or before the Bid Deadline.

A bid received from a Qualified Bidder will constitute a Qualified Bid only if it includes all of the Required Bid Documents and meets all of the above requirements. Notwithstanding the foregoing, a Stalking Horse Bidder, if any, shall be deemed a Qualified Bidder, and its Stalking Horse Agreement shall be deemed a Qualified Bid for all purposes in connection with the Bidding Procedures. By submitting a bid, a Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and authorizes the Debtors to provide all documents that comprise the Qualified Bid to the Consultation Parties on a confidential basis.

All Qualified Bids or combination of Qualified Bids will be considered, but the Debtors reserve the right to reject any and all bids, including any credit bids, other than the highest or otherwise best bid(s) as determined in consultation with the Consultation Parties, but otherwise in the Debtors' discretion. The Debtors may, in their discretion (and in consultation with the Consultation Parties), evaluate bids on numerous grounds including, but not limited to, any delay, additional risks (including closing risks) and added costs to the Debtors including, without limitation, payment of any Stalking Horse Protections. Bids other than Qualified Bids will not be considered. For the avoidance of doubt, the Debtors, in consultation with the Consultation Parties, will consider bids for all, or a subset of, the Assets.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Assets that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or, as to the Successful Bidder, the asset purchase agreement with such Successful Bidder.

6.    **Auction**

In the event that the Debtors timely receive more than one Qualified Bid, the Debtors shall conduct the Auction of the Assets. The Auction shall be in accordance with these Bidding Procedures and upon notice to all Qualified Bidders who have submitted Qualified Bids.

Only representatives or agents of the Debtors, the Stalking Horse Bidder, if any, the Official Committee of Unsecured Creditors appointed in the Chapter 11 Cases, the DIP Lenders, the ABL Lenders, the Pre-Petition Term Lenders and any Qualified Bidder that has submitted a Qualified Bid (and the legal and financial advisors to each of the foregoing), will be entitled to attend the Auction, and only the Stalking Horse Bidder, if any, and Qualified Bidders will be entitled to make any subsequent bids at the Auction *provided, however*, counterparties to Assigned Contracts and their legal advisors may attend the Auction by notifying counsel for the Debtors of their intent to attend the Auction on or before September 16, 2019 at 2:00 p.m. (prevailing Eastern Time) via email (pburgess@fbtlaw.com, rgold@fbtlaw.com, dlutz@fbtlaw.com, awebb@fbtlaw.com).

At least one business day prior to the Auction, the Debtors will provide copies of the Qualified Bid or combination of Qualified Bids that the Debtors believe is the highest or otherwise best offer (the "**Baseline Bid**") to all Qualified Bidders that have informed the Debtors of their intent to participate in the Auction.

The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (*e.g.*, the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, *provided, however* such rules are (a) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code or any Order of the Bankruptcy Court entered in connection herewith and (b) disclosed to each Qualified Bidder; and *provided further* that all bids shall be made openly, in the presence of all parties at the Auction.

Bidding at the Auction will begin with the Baseline Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid is submitted by a Qualified Bidder(s) that (a) improves upon such Qualified Bidder's immediately prior Qualified Bid (a "**Subsequent Bid**") and (b) the Debtors determine that such Subsequent Bid is (i) for the first round, a higher or otherwise better offer than the Baseline Bid and (ii) for subsequent rounds, a higher or otherwise better offer than the Leading Bid (as defined below), in each case taking into account other Qualified Bids for other Assets. The Debtors, in their sole discretion

but in consultation with the Consultation Parties, may determine appropriate minimum bid increments or requirements for each round of bidding.

After the first round of bidding and between each subsequent round of bidding, the Debtors shall announce the bid or bids that they believe to be the highest or otherwise best offer or combination of offers (as applicable, the "**Leading Bid**").

A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid with full knowledge and written confirmation of the Leading Bid. For the purpose of evaluating the value of the consideration provided by Subsequent Bids, the Debtors may take into account the Break-Up Fee and the Expense Reimbursement Amount that may be payable under any Stalking Horse Agreement, if one exists. For the purpose of evaluating Subsequent Bids, the Debtors may require a Qualified Bidder submitting a Subsequent Bid to submit, as part of its Subsequent Bid, additional evidence (in the form of financial disclosure or credit-quality support information or enhancement reasonably acceptable to the Debtors in their sole discretion) demonstrating such Qualified Bidder's ability to close the proposed transaction.

**7.**     **Selection of Successful Bid**

The Debtors reserve the right to (i) determine in their reasonable discretion, after consultation with the Consultation Parties, which Qualified Bid is the highest or otherwise best and (ii) reject at any time prior to entry of a Court order approving an offer, without liability, any bid or offer, other than a Stalking Horse Bid, if one exists, that the Debtors in their reasonable discretion deem to be (x) inadequate or insufficient, (y) not a Qualified Bid or not otherwise in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, or procedures set forth therein or herein or (z) contrary to the best interests of the Debtors and their estates.

The Debtors, in consultation with the Consultation Parties, may take the following considerations into account when evaluating Qualified Bids: (a) the purchase price and valuation of non-cash consideration; (b) the overall value to be provided to the Debtors under the bid, including payment of Cure Costs, assumption of liabilities and the net economic effect upon the Debtors' estates; (c) the ability to obtain any and all necessary applicable regulatory approvals for the proposed Sale Transaction; (d) other contingencies and the ability to close the proposed Sale Transaction on a basis acceptable to the Debtors, and any incremental costs to the Debtors as a result of potential closing delays; (e) whether a bid on all or substantially all of the Assets is more beneficial to the Debtors' estates than individual bids on subsets of Assets (either separately or collectively), or vice versa; and (f) any other factors that the Debtors, after consultation with the Consultation Parties, may deem relevant.

Prior to the conclusion of the Auction, the Debtors will: (a) review and evaluate each bid made at the Auction on the basis of financial and contractual terms and other factors relevant to the sale process, including those factors affecting the speed and certainty of consummating the Sale Transaction; (b) identify the highest or otherwise best offer or collection of offers (the "**Successful Bid**"); (c) determine which Qualified Bid is the Successful Bid and which is the next highest or otherwise best offer or collection of offers (the "**Alternate Bid**") for the Assets; and (d) notify all Qualified Bidders participating in the Auction, prior to its adjournment, of the

successful bidder (the "**Successful Bidder**"), the amount and other material terms of the Successful Bid and the identity of the party or parties that submitted the Alternate Bid (the "**Alternate Bidder**"). By the Outside Closing Date, the Successful Bidder and the applicable Debtors shall complete and execute all agreements, instruments or other documents necessary to consummate the applicable Sale Transaction or otherwise contemplated by the applicable Successful Bid.

The Debtors will sell the Assets for the highest or otherwise best Qualified Bid to the Successful Bidder upon the approval of such Qualified Bid by the Bankruptcy Court after the Sale Hearing. The presentation of a particular Qualified Bid to the Bankruptcy Court for approval does not constitute the Debtors' acceptance of the Qualified Bid. The Debtors will be deemed to have accepted a Qualified Bid only when the bid has been approved by the Bankruptcy Court at the Sale Hearing. Only a Successful Bidder or Alternate Bidder, as applicable, shall be entitled to purchase the Assets pursuant to these Bidding Procedures.

If for any reason, the entity or entities that submit the highest or otherwise best Qualified Bid fails to consummate the purchase of the Assets, or any part thereof, the Debtors and the Alternate Bidder are authorized to effect the sale of the Assets to such Alternate Bidder as soon as is commercially reasonable. If such failure to consummate the purchase is the result of a breach by the Successful Bidder, the Debtors reserve the right to seek all available remedies from the defaulting Successful Bidder, subject to the terms of the applicable purchase agreement. Furthermore, if a Successful Bidder fails to consummate an approved Sale Transaction because of a breach or failure to perform on the part of such Successful Bidder, the Debtors shall be entitled to retain the Good Faith Deposit thereof as part of its damages resulting from such breach of failure to perform.

8.    **The Sale Hearing**

The Sale Hearing will be held before the Honorable Gregory R. Schaaf on **September 24, 2019 at 9:00 a.m. (prevailing Eastern Time)** in the United States Bankruptcy Court for the Eastern District of Kentucky, 100 East Vine Street, Suite 200, Second Floor Courtroom, Lexington, Kentucky 40507. The Sale Hearing may be adjourned without further notice by an announcement of the adjourned date at the Sale Hearing. At the Sale Hearing, the Debtors will seek approval of the offer or offers constituting the Successful Bid and, at the Debtors' election, the offer constituting the Alternate Bid.

The Debtors' presentation to the Bankruptcy Court of the offer or offers constituting the Successful Bid and Alternate Bid will not constitute the Debtors' acceptance of either of any such bid, which acceptance will only occur upon approval of such bid by the Bankruptcy Court at the Sale Hearing. Following approval of the Sale Transaction to the Successful Bidder, if the Successful Bidder fails to consummate the sale because of (a) failure of a condition precedent beyond the control of either the Debtors or the Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such failure or (b) a breach or failure to perform on the part of such Successful Bidder upon which occurrence the Debtors have filed a notice with the Bankruptcy Court advising of such breach or failure to perform, then the Alternate Bid will be deemed to be the Successful Bid and the Debtors will be authorized, but

not directed, to effectuate a sale to the Alternate Bidder subject to the terms of the Alternate Bid of such Alternate Bidder without further order of the Bankruptcy Court.

### 9.      **Return of Good Faith Deposit**

The Good Faith Deposits of all Qualified Bidders will be held in escrow and will not become property of the Debtors' bankruptcy estates unless released from escrow pursuant to further order of the Bankruptcy Court. The Debtors will retain the Good Faith Deposits of the Successful Bidder and the Alternate Bidder until the closing of the Sale Transaction unless otherwise ordered by the Bankruptcy Court. The Good Faith Deposits of the other Qualified Bidders will be returned within five business days of the entry of the Sale Order. At the closing of the Sale Transaction contemplated by the Successful Bid, the Successful Bidder will be entitled to a credit for the amount of its Good Faith Deposit. The Good Faith Deposit of the Alternate Bidder will be released by the Debtors five business days after the closing of the Sale Transaction.

### 10.     **Credit Bidding**

(a)      **Credit Bidding Procedures Applicable to Both a Lender Bidder and a Potential Credit Bidder.** For any party submitting a credit bid including, without limitation, a Lender Bidder or Potential Credit Bidder (as those terms are defined herein), such bidder must: (i) provide evidence satisfactory to the Debtors and the Consultation Parties that such bidder has the financial wherewithal, without financing or other contingencies, to pay cash in the amount of its credit bid if such credit bidder's liens are disallowed or avoided after the Auction; and (ii) in the event that any lien is avoided pursuant to a court order, settlement agreement, or otherwise after the Auction, pay cash in the amount of the credit bid or such other amount determined by the Court relating to the portion of the avoided lien within fifteen (15) business days of entry of a court order, settlement agreement, or otherwise avoiding such lien.

(b)      **Credit Bidding Procedures Only Applicable to a Lender Bidder**. Subject to compliance with subsection (a) above and the Final DIP Order, including Paragraph 25 of the Final DIP Order, the DIP Lender (for the avoidance of doubt, as Lenders under the Pre-Petition ABL Credit Agreement and as post-petition secured lenders pursuant to the Final DIP Order), the Pre-Petition ABL Agent, the Pre-Petition Term Lenders, or their designees, assignees, or successors, as those terms are defined in the Final DIP Order (such bidder, a "**Lender Bidder**"), shall automatically be deemed a Qualified Bidder, and shall have the right to credit bid, subject to section 363(k) of the Bankruptcy Code, on a dollar-for-dollar basis up to the full amount of the outstanding obligations owing by the Debtors to said party (collectively, the "**Obligations**"). Any credit bid shall be treated as the equivalent of a cash bid; *provided, however,* a Lender Bidder may only submit a credit bid on the Assets of the Debtors that are subject to a first priority, valid, perfected lien of the applicable Lender Bidder that is not otherwise subject to avoidance, unless such Lender Bidder's bid contains a cash component sufficient to retire any liens senior to the Lender Bidder that encumber such asset. For the avoidance of doubt, any bid by the ABL Lenders and/or the Pre-Petition Term Lenders shall provide sufficient cash to indefeasibly pay in full all fees associated with the transaction, including fees that may be earned by Jefferies in connection with the transaction, and payments required to be made under section 365 of the Bankruptcy Code. Additionally, any bid by the ABL Lenders and/or the Pre-Petition

Term Lenders on assets not subject to the senior liens of the ABL Lenders and/or the Pre-Petition Term Lenders, as applicable, shall be required to be a cash bid. Pursuant to Bankruptcy Code section 363(k), the Lender Bidder may submit subsequent and increased credit bids or overbids at the Auction in compliance with the Bidding Procedures. A Lender Bidder shall not be required to provide a Good Faith Deposit so long as there is no cash component of the bid. To the extent there is a cash component to the bid by a Lender Bidder, such Good Faith Deposit would not be required unless the Good Faith Deposit equals or exceeds $100,000.00. Notwithstanding anything to the contrary contained in these Bidding Procedures, to the extent that the value of an Asset on which a lien is avoided pursuant to a court order, settlement agreement, or otherwise (or to which an avoidance action has been commenced or threatened) is valued at $25,000 or less (up to an aggregate value for all avoided liens of the Lender Bidder, $250,000), a Lender Bidder shall be permitted to remove such Asset from those Assets being purchased prior to the date of the Auction, whether or not the Auction is held.

(c)    **Credit Bidding Procedures Only Applicable to a Potential Credit Bidder**. For any bidder other than a Lender Bidder seeking to credit bid on an Asset or group of Assets in which the bidder purportedly holds a first priority, valid, perfected lien on such Asset that is not otherwise subject to avoidance (a "**Potential Credit Bidder**"), such Potential Credit Bidder shall, in addition to complying with the requirements of subsection (a) above, file with the Bankruptcy Court on or before August 23, 2019 a notice substantially in the form of the following: (i) stating the Potential Credit Bidder's intent to credit bid; (ii) describing the Asset(s) upon which the Potential Credit Bidder may credit bid with specificity; (iii) detailing the Potential Credit Bidder's basis for submitting a credit bid on the Asset(s); (iv) providing evidence of the Potential Credit Bidder's purported first priority, valid, and perfected security interest on such Asset(s), including any outstanding balance purportedly owed by the Debtors on the obligations secured by such Asset(s); and (v) all terms, conditions, and/or contingencies under which the Potential Credit Bidder intends to acquire such Assets and all agreements related thereto, which shall be signed by the Potential Credit Bidder and irrevocable (a "**Credit Bid Notice**"). Parties will have seven (7) days to file with the Court an objection to a Credit Bid Notice (a "**Credit Bid Notice Objection**"). To the extent the parties are unable to consensually resolve a Credit Bid Notice Objection, the Credit Bid Notice and the Credit Bid Notice Objection shall be set for an expedited hearing before the Bankruptcy Court prior to the Auction. To the extent there is either (x) no Credit Bid Notice Objection, or (y) the Potential Credit Bidder is determined by agreement of the objecting parties or Court order to be entitled to credit bid pursuant to a Credit Bid Notice, the Potential Credit Bidder will be deemed a Qualified Bidder and shall have the right to credit bid subject to section 363(k) of the Bankruptcy Code, on a dollar-for-dollar basis up to the full amount of the outstanding obligations owing by the Debtors to the Potential Credit Bidder. For purposes of clarity, the Potential Credit Bidder will not be required to make a Good Faith Deposit so long as there is no cash component of the bid; and further, solely as to any equipment-based Potential Credit Bidder, such Credit Bid Notice, together with a specified bid amount submitted by the Bid Deadline, shall be deemed a Qualified Bid and any such equipment-based Potential Credit Bidder will not be required to include any additional Required Bid Documents. Notwithstanding anything to the contrary contained in these Bidding Procedures, the right of an interested party to file an adversary proceeding or contested matter to avoid the lien(s) of any Potential Credit Bidder otherwise authorized to submit a credit bid in accordance with these procedures shall terminate upon the closing of any such sale(s) at which the Potential Credit Bidder is the ultimate successful purchaser.

11.     **As Is, Where Is**

The sale of the Assets shall be on an "<u>as is, where is</u>" basis and without representations or warranties of any kind, nature, or description by the Debtors, their agents or their estates except as provided in any agreement with respect to the sale or sales approved by the Bankruptcy Court.

12.     **Free and Clear of Any and All Interests**

Except as otherwise provided in a Successful Bidder's purchase agreement, all of the Debtors' rights, title and interest in and to the Assets subject thereto shall be sold free and clear of any pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**") to the maximum extent permitted by section 363 of the Bankruptcy Code, with such Interests to attach to the net proceeds of the sale of the Assets with the same validity and priority as such Interests applied against the Assets.

13.     **Modification of Bidding Procedures**

The Debtors may, after consultation with the Consultation Parties, amend these Bidding Procedures at any time, and from time to time, in any manner that they determine in good faith will best promote the goals of the Bidding Process, including, without limitation, extending or modifying any of the dates described herein or the information and materials required from Qualified Bidders.

0110825.0722105  4840-0005-4940v11