**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

|  |  |  |
|---|---|---|
| | : | |
| IN RE: | : | **CASE NO. 19-51200** |
| | : | |
| **CAMBRIAN HOLDING COMPANY,** | : | **CHAPTER 11** |
| INC. et al, | : | **(Joint Administration Granted)** |
| | : | |
| **DEBTORS.** | : | **JUDGE GREGORY R. SCHAAF** |

**MOTION A) FOR ORDER OF CONTEMPT AGAINST AMERICAN RESOURCES
CORPORATION, PERRY COUNTY RESOURCES LLC AND PRISTINE CLEAN
ENERGY AND B) TO AMEND PRIOR ORDER [Related Doc. 667];
NOTICE OF HEARING**

TO THIS HONORABLE COURT:

Kentucky Employers' Mutual Insurance Company ("KEMI"), through the undersigned

counsel, and pursuant to 11 U.S.C. §§ 105, and Rule 9014 and 9020 of the Rules of Bankruptcy

Procedure, hereby files its Motion to a) For An Order of Contempt against American Resources

Corporation ("ARC"), Perry County Resources LLC ("PCR") and Pristine Clean Energy

("PCE"), for each's continued violation of this Court's Order entered on October 21, 2019 [Doc.

667; the "Premium Payment Order"], directing payment of certain sums due and owing to KEMI

under the terms of the Sale Order [Doc. 534]; and b) To Amend The Premium Payment Order to

include PCR as a jointly-obligated party with respect to the payment sum commanded of ARC.

In support of this Motion, KEMI states as follows:

1.     On September 24, 2019, this Court entered an order approving the sale of

substantially all of the Debtors' assets to three separate purchasers – including ARC and PCE,

the acquiring parties of the "Perry County Coal" and "Premier Elkhorn" assets/operations,

respectively [Doc. No. 534; the "Sale Order"].

2.      On October 3, 2019, after the Debtors' regularly scheduled premium payment of $850,000 was not paid (the "Unpaid Premium Payment"), KEMI renewed its prior filed motion for relief from the automatic stay, seeking to terminate the Debtors' workers' compensation insurance policy with KEMI (the "KEMI Policy"). In conjunction with this relief, KEMI also requested an order be entered against ARC and PCE, directing each to pay its proportional share of the Unpaid Premium Payment, which amounts to $551,565.00 by ARC and $180,625.00 by PCE, per the terms of the Sale Order and the representations made on the record by counsel for ARC and PCE.

3.      At the hearing on October 17, 2019 on the aforementioned renewed motion, and consistent with prior representations to KEMI's counsel, Debtors stated on the record that a) all employees associated with PCE/Premier Elkhorn had been terminated as of October 4, 2019; and b) all employees associated with ARC/Perry County Coal would be terminated effective on October 18, 2019. Based on these representations – and the fact that the Debtors' accruing liability on the KEMI Policy would normally cease if such employees did not continue to earn wages following these dates – KEMI did not pursue the immediate termination of the KEMI Policy, but instead sought and received an order from the Court directing payment of the aforementioned sums.

4.      After entry of the Premium Payment Order, KEMI reached out to counsel for ARC and PCE, regarding prompt payment of same. Counsel for PCE complained that given the purported termination of the PCE-affiliated employees, the amount commanded in the Premium Payment Order was substantially in excess of the accrued liability. If in fact Debtors' employees had been terminated from Debtors' payroll, then such concerns would be potentially accurate.

Despite KEMI's reaching out to ARC regarding payment under the Premium Payment Order, no response has been provided yet.

5.      KEMI's reliance upon Debtors' assurances at the October 17, 2019 hearing, regarding termination of employees, may turn out to have been substantially misplaced.

6.      After expiration of the KEMI Policy at 11:59 p.m. on October 25, 2019, Debtors' representatives received the final payroll reports with respect to each of the three purchasers designed in the Sale Order. To the shock of KEMI, the payroll reports reflected no reduction in Debtors' workforce as related to the ARC- or PCE-affiliated employees, and actually reflected an increase in Debtors' workforce over prior months, with substantially higher remuneration to the purportedly terminated employees. Upon information and belief, although Debtors may have provided certain employees with termination notices, Debtors may have paid some of these former employees their entire sums of accrued paid time off ("PTO"), without any regard for whether or not such claims are in violation of the creditor priority set forth in Section 507(a) of the Bankruptcy Code. As of the filing of this Motion, Debtors have not yet provided KEMI with any revisions to these payroll reports.

7.      At this point, KEMI has no idea whether payment of Debtors' employees for their PTO was either at the direction of, or funded by, either ARC or PCE, but suspects that it was so funded given the Debtors' pleas of poverty prior to the asset sale being confirmed. If so, this represents a substantial disrespect to this Court and its orders (specifically, the Premium Payment Order), as ARC and PCE are essentially picking and choosing which assumed liabilities for which they will actually pay, while continuing to use the Debtors as a payment conduit for same,

and potentially exposing the estates to substantial claims and liability for their complicity in violating Section 507(a), while ignoring the Premium Payment Order.[1]

8.    Accordingly, the sums directed in the Sale Order may no longer substantial "overpayments" for the liability assumed by ARC and PCE. Rather, they may now substantial underpayments, as the amount due and owing to KEMI for each purchaser's share of the "actual" liability for premiums assumed based on the only payroll reports KEMI has received to date is **$715,498.04** for ARC and **$202,741.22** for PCE. Meanwhile, neither ARC nor PCE have paid a single dime despite this Court ordering each to do so, and have given no indication that they will pay anything.

9.    KEMI has made effort to avoid further proceedings before the Court as to the Premium Payment Order; however, such efforts have been fruitless to date.[2]

10.    KEMI therefore requests that the Court enter an order modifying the Premium Payment Order, for purposes of reflecting both a) the above final and actual amounts due and owing to KEMI by ARC and PCE[3], rather than only each's share of the $850,000.00 installment; and b) that the ultimate party in whose name the Perry County Coal assets have been apparently placed (Perry County Resources LLC), which is believed to be a wholly owned subsidiary of ARC and therefore, based on such assignment, should also be liable for the Debtors' obligations assumed under the Sale Order.

11.    Moreover, because neither ARC nor PCE have made any payment to KEMI of any sum, each remains in violation of this Court's Premium Payment Order. Neither has provided

---

[1] In a recent filing, Debtors have now taken the position that the estates cannot now be liable for the unpaid workers' compensation insurance premiums that accrued post-petition – despite the fact that Debtors did not pursue the Bankruptcy Code's prescribed path for such divestment (the assumption and assignment of the KEMI Policy to ARC or PCE), as it did with countless lessors on a vast array of mineral leases.

[2] Prior to the filing of this Motion, PCE made an offer to pay part of the total premium liability (the actual share due through September 30, 2019), with the remainder to be paid in 60 days. ARC has made no offer.

[3] Or such others sums as may be ascertained following Debtors' submission of revised payroll reports, if any.

any valid excuse or justification for its failure to do so. <u>KEMI therefore requests an order of civil contempt be entered against ARC and its subsidiary, Perry County Resources LLC, and PCE</u>.

12.    Section 105 of the Bankruptcy Court authorizes this Court to exercise authority to hold parties in contempt for certain actions that are violative of this Court's orders, or other pertinent statutes. See *In re Jones*, 603 B.R. 325 (Bankr. E.D.Ky. 2019) (order of contempt and damages/sanctions awarded for violation of debtor discharge injunction); *In re Matter of Terrebonne Fuel and Lube, Inc.*, 108 F.3d 609 (5th Cir. 1997); *In re Andrus*, 184 B.R. 311 (Bankr. N.D. Ill. 1995) (offending party must have knowingly violated definite and specific court order).

13.    ARC and PCE have failed to comply with the terms of the Premium Payment Order, to the substantial detriment of the Debtors' estates.[4] A party should be held in contempt where it has violated the court's definite and specific order requiring performance (or restrain from performance) of a certain act, and the party has knowledge of said order; even so, willfulness is not necessarily required. See *In re Elder-Beerman Stores Corp.*, 197 B.R. 629 (Bankr. S.D. Ohio 1996). All elements are met in the present matter.

14.    As part of an order of contempt, this Court is authorized to award appropriate remedies, including monetary sanctions and other appropriate items of damages, for said contemptuous actions. These sanctions include an appropriate award of attorneys' fees and costs involved, as may be appropriate to punish and deter such conduct. See, generally, *In re Eppolito*, 583 B.R. 822 (Bankr. S.D.N.Y. 2018).

---

[4] As the premiums due under the Policy are a normal business expense of preserving the Chapter 11 estates, such sums are entitled to administrative expense priority; therefore, absent payment of same, KEMI has an administrative expense claim payment for all sums due and owing, regardless of whether or not a non-party to the Policy agreed to pay for same.

15.    ARC and PCE failed to previously appear and contest KEMI's right to payment, as embodied in the Premium Payment Order. However, each had and continues to have notice, as the undersigned sent a copy of this Order on or about October 21, 2019, to counsel. Neither has made any effort to comply with the terms of the Premium Payment Order, and the 14-day limitation provided under Fed. R. Bank. P. 8002 has passed. Given ARC and PCE's failure to file any written objection or appear at any hearing, they have not preserved any such claim of error.

16.    Accordingly, KEMI requests that both ARC and PCE be held in contempt of court, and that this Court award the following as sanctions: a) an award of $3,000.00 in attorneys' fees against each for a total of $6,000.00, for the approximate time and effort spent by KEMI's counsel in attempting to obtain payment for the workers' compensation premiums due and owing, including the preparation of and attendance at both hearing on the present Motion and the prior October 17, 2019 hearing concerning same; and b) that ARC and its subsidiary, PCR, and PCE be subject to civil fines of $1,000.00 per day from the date of entry of an order holding them in contempt, until payment in full of the sums as commanded in the Premium Payment Order as amended (including the revised amounts if any accrued prior to expiration of the Policy).

17.    A representative of PCR has been subpoenaed to appear at a hearing on this motion, for the purpose of providing testimony as to the inability of ARC and/or PCR to comply with this Court's Premium Payment Order. (See Doc. No. 702.)

## NOTICE OF HEARING

Please take notice that the foregoing shall come on for hearing on the **21st day of November, 2019**, at the hour of **9:00 a.m.** local prevailing time, in the United States Bankruptcy Court, Second Floor Courtroom, 100 E. Vine Street, Lexington, KY or as soon thereafter as may be heard.

Dated this 7th day of November, 2019.

> **FOWLER BELL PLLC**
>
> */s/  Matthew D. Ellison*
> Taft A. McKinstry, Esq. (KBA 46610)
> Matthew D. Ellison, Esq. (KBA 91016)
> 300 West Vine Street, Suite 600
> Lexington, KY  40507-1751
> Telephone: (859) 252-6700
> Facsimile: (859) 255-3735
> Email:   MEllison@Fowlerlaw.com
> **ATTORNEYS FOR KENTUCKY EMPLOYERS' MUTUAL INSURANCE COMPANY**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this the 7th day of November, 2019, electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures upon all parties in the electronic filing system in this case, including the United States Trustee and Debtors' counsel, and counsel for the Unsecured Creditors' Committee.

> */s/ Matthew D. Ellison*
> **ATTORNEYS FOR KENTUCKY EMPLOYERS' MUTUAL INSURANCE COMPANY**

4821-0008-2091, v. 1