**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | CHAPTER 11 |
| CAMBRIAN HOLDING COMPANY, INC. ET AL.[1] | CASE NO. 19-51200 (GRS) |
| DEBTORS | JOINTLY ADMINISTERED |
| HAZARD COAL CORPORATION | PLAINTIFF |
| V. | ADV. NO. 19-5023 |
| AMERICAN RESOURCES CORPORATION | DEFENDANT |

**MEMORANDUM OPINION
AND ORDER**

Hazard Coal Corporation filed the Hazard Coal Corporation's Protective Motion for Reconsideration or in the Alternative, Motion to Alter, Amend or Vacate the Sale Order with Respect to American Resources Corporation. [Case No. 19-51200, ECF No. 595 (the "Motion to Reconsider").] The Motion to Reconsider seeks alteration of the Order (I) Approving the Sale of Substantially All of the Debtors' Assets Related Thereto Free and Clear of All Non-Assumed Liens, Claims, Encumbrances and Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and (III) Granting Related Relief. [*Id*., ECF No. 534 (the "Sale Order").] The Sale Order authorized the Debtors to sell substantially all their assets.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Cambrian Holding Company, Inc. (8203), Cambrian Coal LLC (3394), Apex Energy, Inc. (3455), C.W. Augering, Inc. (2875), Marshall Resources, Inc. (9735), PLM Holding Company LLC (7427), Bear Branch Coal LLC (0674), Clintwood Elkhorn Mining LLC (6910), Gatliff Coal LLC (5768), Perry County Coal LLC (4382), Ray Coal LLC (0981), Whitaker Coal LLC (8270), Pike-Letcher Land LLC (8952), Premier Elkhorn Coal LLC (8951), Raven Rock Development LLC (1351), Rich Mountain Coal LLC (1974), S.T. & T. Leasing, Inc. (0340), T.C. Leasing, Inc. (7705), and Shelby Resources, LLC (5085).

1

Hazard Coal also filed an adversary complaint against American Resources Corporation, the purchaser of the Debtors' assets in Perry County, Kentucky, from the Debtor Perry County Coal, LLC, among others. [Case No. 19-5023, ECF No. 1.] The Complaint seeks a declaration that a coal mining lease with Perry County Coal terminated prepetition. [*Id.*] If the lease terminated prepetition, it was not part of the bankruptcy estate and was not sold pursuant to the Sale Order.

The Sale Order is final. Hazard Coal had notice of the proposed assignment and cure costs early in the sale process but did not raise a timely objection to the transfer. Therefore, Hazard Coal's arguments are barred. Further, Hazard Coal has not presented sufficient grounds to justify the significant harm caused by reconsideration of the Sale Order. Therefore, the Motion to Reconsider is denied and the adversary proceeding is dismissed.

**I.      Relevant Facts and Procedural History.**

    **A.      The Hazard Coal Lease.**

Hazard Coal, as lessor, and Whitaker Coal Corporation, as lessee, entered into a Lease Agreement dated December 1, 1981. [Case No. 19-5023, ECF No. 1-1, Exh. A (the "Lease").] The papers do not explain how Perry County Coal obtained the lessee interest, but the arguments of all parties confirm it was acquired prepetition. The Lease allows Perry County Coal to mine coal from, and transport coal over, the lessor's real property in Perry County, Kentucky. The Lease requires annual and tonnage royalty payments and wheelage fees.

    **B.      The Bankruptcy Filing**.

On June 16, 2019, the Debtor and eighteen related entities filed voluntary chapter 11 bankruptcy petitions. [*See e.g.* Case No. 19-51200, ECF No. 1.] An Order directing the joint administration of the cases was entered on June 18, 2019. [*Id.*, ECF No. 81.] Hazard Coal was

identified as a creditor of Perry County Coal on the creditor matrix filed with the petition and Schedules E/F and G.  [*See* Case No. 19-51217, ECF No. 5 at p. 69, ECF No. 22 at pp. 36, 68.] Hazard Coal was notified of the bankruptcy filings by first class mail sent on June 26, 2019. [Case No. 19-51200, ECF No. 214, Exh. A at p. 41.]

    **C.**    **The § 363 Sale.**

An Order (A) Establishing Bidding and Sale Procedures with Respect to the Sale of Substantially All Assets, (B) Authorizing the Entry Into a Stalking Horse Agreement and the Provision of Stalking Horse Protections, (C) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof, and (D) Granting Related Relief was entered on August 7, 2019.  [Case No. 19-51200, ECF No. 339 (the "Bid Procedures Order").] The Bid Procedures Order scheduled a sale hearing on September 24, 2019, and described the procedures for receiving and accepting offers for the Debtors' assets.

The Bid Procedures Order established important deadlines in Paragraphs 11 and 17 (in bold type):

- September 9, 2019:  objections to cure costs;

- September 16, 2019:  objections to the assumption and assignment of any contracts or leases assigned; and

- September 20, 2019:  objections to approval of the sale of the Debtors' assets.

[*Id*.]  Missing these deadlines barred interested parties from contesting approval of the sale and transfer of the Debtors' assets.

Paragraphs 14 and 18 of the Bid Procedures Order notified interested parties that:

A party that fails to timely file an objection to a proposed sale by the Objection Deadline shall be (a) forever barred from asserting any objection to entry of the Sale Order or consummation of the applicable Sale Transaction and (b) deemed to

> have consented to entry of the Sale Order and consummation of the Sale Transaction…
>
> \* \* \* \* \*
>
> Unless a non-debtor counterparty to an Assigned Contract has timely and properly filed and served an objection to the assumption and assignment of its Assigned Contract or the Cure Costs, the Cure Costs set forth in the Cure Schedule shall be binding up the non-debtor counterparties to the Assigned Contracts for all purposes in these chapter 11 cases and shall constitute a final determination of the total Cure Costs required to be paid by the Successful Bidder in connection with the assumption and assignment of the Assigned Contracts (unless a portion of such costs are paid or satisfied in any manner, in which case the Cure Costs shall be reduced). Absent a timely a property filed and served objection, all non-debtor counterparties to the Assigned Contracts shall be forever (a) barred from objecting to the Cure Costs and from asserting any additional cure or other amounts with respect to the Assigned Contracts, and the Debtors and the Successful Bidder shall be entitled to rely solely upon the Cure Costs set forth in the Cure Schedule; and (b) barred, estopped and permanently enjoined form asserting or claiming against the Debtors, any Successful Bidder or their respective property that any additional amounts are due or other defaults exist, that conditions to assignment must be satisfied under such Assigned Contract or that there is any objection or defense to the assumption and assignment of such Assigned Contract.

[*Id*.]

The objection deadlines, the September 24 hearing, and other information regarding the sale were described in the Notice of Auction and Sale Hearing for the Sale of Debtors' Assets filed on August 7, 2019. [Case No. 19-51200, ECF No. 341.] Hazard Coal did not file objections to the cure costs, the assumption and assignment of its contract, or approval of the sale by the deadlines in the Bid Procedures Order.

On August 8, 2019, Hazard Coal filed a Proof of Claim asserting a general unsecured claim of $138,069.72, for wheelage payments and the annual minimum royalty payment. [*Id*., ECF No. 728-5, Exh. E.]

4

On August 23, 2019, the Debtors filed a Notice of (A) Potential Assumption and Assignment of Executory Contracts and Unexpired Leases and (B) Cure Amounts. [*Id.*, ECF No. 381.] The Notice provides:

> **You are receiving this notice because you may be a counterparty to an executory contract or unexpired lease with the above-captioned Debtors. Please read this notice carefully as your rights may be affected by the transactions described herein.**

[*Id* (emphasis in original).] Attached to the Notice is a Cure Schedule that describes the Lease and proposes a cure payment of $198,375.90. [*Id.*, ECF No. 381-1, Exh. 1.] The Notice was served on "Hazard Coal Corporation, ATTN Mitchell Durham, 2750 Paris Pike, Lexington, KY 40511" on August 26, 2019. [*Id.*, ECF No. 575, Exh. 1 at p. 45.]

The sale process is described in the affidavit in support of the sale provided by Leon Szlezinger, Managing Director at Jeffries LLC, the investment banker for the Debtors. [*Id.*, ECF No. 518.] An auction was conducted on September 19, 2019, and successful bidders were identified. The bidding process for the Perry County assets was reopened on September 22 and a purchase agreement was finalized with American Resources. An auction was held on September 23 to allow competing bidders a chance to make a higher offer. American Resources prevailed and the transaction was presented for approval.

The sale hearing was held as scheduled at 9:00 a.m. on September 24. The majority of the objections to approval of the sale were filed by counterparties to the leases and executory contracts (referred to in the papers filed as the "Assigned Contracts"). One minute after the hearing started, Hazard Coal filed a Notice of Entry of Appearance and Objection to Motion to Approve Auction Bid. [*Id.*, ECF No. 521.] Hazard Coal did not, however, attend the sale hearing to notify the Court and parties of its objection.

During the sale hearing, counsel for the Debtors described an agreement with the purchasers on a mechanism to satisfy the concerns of the counterparties to the Assigned Contracts. [*Id*., ECF No. 524.] The purchasers confirmed this agreement on the record and no other objections were raised. [*Id.*] Further, no party accepted the invitation to cross-examine Mr. Szlezinger's testimony in support of the sale. [*Id.*]

Based on the information provided at the sale hearing, the testimony of Mr. Szlezinger, the resolution of the objections, and the record, the sale was approved by the Sale Order. [*Id*., ECF No. 534.] The Sale Order approves the assumption and assignment of the Assigned Contracts on schedules provided by the buyers. [*Id*.] The schedule related to the Perry County Coal assets purchased by American Resources includes the Lease. [*Id*., ECF Nos. 567-4, 608.]

The Sale Order found sufficient notice of the sale and an adequate opportunity to object. [*Id*., ECF No. 534 at ¶¶ C-E.] It further provides:

> Each counterparty to the Assigned Contracts is hereby forever barred, estopped and permanently enjoined from raising or asserting against the Debtors or the Buyers, or the property of any of them, any assignment fee, default, breach, claim, pecuniary loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

[*Id*. at ¶ 21.] The Sale Order was effective immediately and was not stayed pursuant to Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d). [*Id*. at ¶ H.] An unsigned draft of the General Assignment and Assumption Agreement and Bill of Sale was attached to the Sale Order. [*Id.*]

The sale closed on September 27, 2019. [*Id.*, ECF No. 554.] A copy of the executed General Assignment and Assumption Agreement and Bill of Sale between the applicable Debtors

6

and American Resources dated September 23, 2019, was filed in the record. [*Id*., ECF No. 856.] The applicable Debtors also entered into a Permit Operating Agreement with Perry County Resources LLC, a subsidiary of American Resources, to allow Perry County Resources to begin operations before the permit transfers were complete. [*Id.*]

      **D.**     **Hazard Coal's Collateral Attacks.**

On September 26, 2019, in obvious disregard of the automatic stay, Hazard Coal filed a complaint against American Resources in the Perry County Circuit Court seeking injunctive relief to prevent assignment of the Lease. On September 27, American Resources filed a Notice of Removal that was not processed by the Court Clerk for procedural reasons. [Case No. 19-51200, ECF Nos. 549, 561.]

On October 4, Hazard Coal filed the adversary proceeding seeking a declaratory judgment that the Lease terminated prepetition and was not property of the estate transferred to American Resources at the September 27 closing. [*Id*., ECF No. 586; Case No. 19-5023, ECF No. 1]. On October 9, two weeks after the sale hearing and entry of the Sale Order, Hazard Coal filed the Motion to Reconsider. [Case No. 19-51200, ECF No. 595]. The Debtors and American Resources objected. [*Id*., ECF No. 728; Case No. 19-5023, ECF No. 16.].

American Resources delivered a check for $198,375.99, the cure payment, to Hazard Coal on October 1, 2019. [Case No. 19-51200, ECF No. 728-8, Exh. H.] Hazard Coal returned the cure payment on October 9. [*Id*., ECF No. 728-9, Exh. I.]

On October 23 Hazard Coal sought a temporary restraining order to enjoin American Resources from entering its property and acting under the Lease. [Case No. 19-5023, ECF No. 10.] American Resources claimed the Sale Order barred Hazard Coal from declaring the Lease terminated prepetition. [*Id*., ECF No. 19]. A hearing was held on October 29 and the expedited

motion for temporary relief was resolved by agreements and concessions from both parties. [*Id.*, ECF No. 24.] Part of the agreement required deposit of the cure payment in the escrow account of counsel for Hazard Coal. [*Id.*, ECF Nos. 24, 27, 28 (the deposit was ultimately paid).]

A status hearing was held on November 21, 2019. The parties agreed the threshold legal issue is whether the Sale Order bars Hazard Coal from disputing the assumption, assignment, and continued existence of the Lease. A scheduling order was entered to expedite the process. [Case No. 19-51200, ECF No. 787; Case No. 19-5023, ECF No. 29.] The issue is fully briefed and ready for a decision. [Case No. 19-51200, ECF Nos. 728, 736, 810, 834, 859; Case No. 19-5023, ECF No. 33.]

**II.     Discussion.**

    **A.     Perry County Coal Retained a Disputed Interest in the Lease that Was Property of the Estate.**

Perry County Coal retained an interest in the Lease despite the alleged termination. The Lease initially required an annual minimum royalty of $100,000.00. [Case No. 19-5023, ECF No. 1-1, Exh. A.] The annual royalty is reduced as the available coal is diminished or depleted. [*Id.*] For example, the annual minimum royalty payment decreases to $25,000.00 when the proven coal reserves are reduced to 25% of the proven coal reserves when the Lease was executed. [*Id.* at ¶ 6(a)(ii).]

The lessee is in default if the payments are not paid within 60 days and Hazard Coal may notify the lessee of its intent to terminate the Lease. [*Id.* at ¶ 12.] The lessee has 30 days to cure the default or the Lease is terminated. [*Id.*] Hazard Coal asserts this occurred prepetition through a series of letters demanding, transmitting, and refusing payments.

8

On February 1, 2019, Hazard Coal notified Mark Campbell, president of Debtor Cambrian Holding Company, Inc., the parent company of Perry County Coal, that Perry County Coal owed $27,656.04 for wheelage charges from April 2018 through December 2018. [*Id.*, ECF No. 39 at ¶¶ 1, 9.] Hazard Coal also demanded $100,000 for the 2019 minimum royalty obligation. [Case No. 19-5023, ECF No. 1-2, Exh. B.] On May 7, 2019, Hazard Coal sent a notice of default and demanded payment of wheelage charges of $32,943.21 for the period April 2018 to March 2019. [*Id.*, ECF No. 1-3, Exh. C.] Hazard Coal again demanded a $100,000.00 minimum royalty payment.

Perry County Coal sent a payment of $35,451.81 on May 31, 2019, for its wheelage obligation. [*Id.*, ECF No. 1-4, Exh. D.] Perry County Coal also sent $25,000.00 for the minimum royalty based on reduced coal reserves. The transmittal letter provides:

> However, per lease agreement dated December 1, 1981 paragraph 6(a)(ii) of the lease. [*sic*] Cambrian should only owe a minimum royalty of $25,000.00 for 2019.
>
> > 6.(a)(ii) When the proven coal reserves on the Coal Properties are diminished or depleted to an amount equal to or less than twenty-five percent (25%) of the presently existing proven reserves, the annual minimum royalty shall decrease to the sum of $25,000.00;

[*Id.*]

Hazard Coal acknowledged receipt of, and returned, the minimum royalty payment by letter to Perry County Coal on June 7, 2019. [*Id.*, ECF No. 1-5, Exh. E.] The check was returned because it was "an insufficient cure for the default mentioned in the" May 7 letter. [*Id.*] There is no evidence the wheelage payment was rejected.

On June 12, 2019, Hazard Coal notified Campbell that the Debtors failed to timely cure the default and the Lease was "null and void and of no further effect." [*Id.*, ECF No. 1, Exh. F.] Despite this declaration, Perry County Coal complied with the terms of the Lease (or cured the

9

default) if the proven coal reserves were reduced to 25% of the proven coal reserves when the Lease was executed. Also, the Debtors included the Lease in the list of assets available for sale, confirming the continued claim to an interest in the Lease.

The facts present a dispute between a lessor and lessee regarding the continued viability of a lease. Resolving this dispute requires proving the amount of reserves upon execution and currently. Other potential disputes could exist, such as partial acceptance of cure or compliance with notice periods. These disputes are enough to show Perry County Coal retained an interest in the Lease that became property of the bankruptcy estate. *See, e.g., In re Minton*, 348 B.R. 467, 472 (Bankr. S.D. Ohio 2006) (citing *Booth v. Vaughan (In re Booth)*, 260 B.R. 281, 284 (6th Cir. B.A.P. 2001) (property of the estate is construed broadly).

The record makes it clear Hazard Coal was on notice of the bankruptcy filings and Perry County Resources' claim to the Lease and the intention to assume and assign the Lease to American Resources. Hazard Coal sat idly by, holding its objections until parties substantially changed their positions. This inaction was not justified, and Hazard Coal must accept the consequences.

### B.  The Sale Order Bars Hazard Coal's Claims.

*Res judicata* bars Hazard Coal from disputing assignment of the Lease to American Resources. *Res judicata* requires the following elements:

(1) a final decision on the merits by a court of competent jurisdiction;
(2) a subsequent action between the same parties or their "privies";
(3) an issue in the subsequent action which was litigated, or which should have been litigated, in the prior action; and
(4) an identity of the causes of action.

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 578 (6th Cir. 2008) (citing *Browning v. Levy,* 283 F.3d 761, 771-72 (6th Cir. 2002)).

The Sale Order is a final order for *res judicata* purposes. *See id.* at 578. "[W]ith the execution of the sale order the debtor's assets are judicially sold and no further litigation can be brought regarding those assets without forcing the court to undo the sale, an action of the very kind *res judicata* seeks to prohibit." *Id.* at 579. The Sale Order "transfers property rights, and property rights are good against the world … ." *In re HNRC Dissolution, Co.*, 549 B.R. 469, 480 (Bankr. E.D. Ky. 2016) (citing *Gekas v. Pipin (In Re Met-L-Wood Corp.)*, 861 F.2d 1012, 1017 (7th Cir. 1988)).

The other elements of *res judicata* are also present. The Sale Order was the result of a sale process that occurred over several months. The motion to approve the sale and the bid procedures was filed on July 12, 2019, and culminated with the sale hearing, entry of the Sale Order, and closing of the sale to the buyers on September 29. [*See* Case No. 19-51200, ECF Nos. 196, 534.] Hazard Coal received notice of the bankruptcy and the actions related to the § 363 sale, including the intention to assume and assign the Lease. [*See infra* at Part I.C.] This included the proposed cure payment disclosed in the August 23 notice of Assigned Contracts. [Case No. 19-51200, ECF Nos. 381, 381-1, 575 (the Lease was also identified in the supplement as described in Part I.C *supra*).]

Hazard Coal ignored the deadlines in the Bid Procedures Order, which bluntly told all counterparties to the Assigned Contracts, including Hazard Coal, that the failure to object "barred, estopped and permanently enjoined" them from making "any objection or defense to the assumption and assignment." [*Id.*, ECF No. 339 at ¶ 14, 18.] Hazard Coal had early notice of the Debtors' intentions and had the burden to assert any defenses prior to the assumption and assignment of the Lease. *In re Ali Props, Inc.*, 334 B.R. 455, 460 (Bankr. D. Kan. 2005); *In re*

11

*Diamond Mfg. Co., Inc.*, 164 B.R. 189, 197 (Bankr. S.D. Ga. 1994).  Hazard Coal did not take reasonable steps to satisfy its burden.

Hazard Coal also did not attend the auction or sale hearing to air its dispute.  Hazard Coal's only effort pre-sale was the objection filed after the sale hearing started.  [Case No. 19-51200, ECF No. 521.]  The objection only indicates the Lease "is in breach and no longer in effect." [*Id.*]  The objection does not mention termination or allege the breach is not curable by the cure payment.  This one-sentence statement does not give notice to the Court, the Debtors, or American Resources that Hazard Coal asserts the Lease is terminated and not subject to cure, assumption, and assignment.

*Res judicata* bars further consideration of Hazard Coals' arguments.

**C.      Hazard Coal is Not Entitled to Reconsideration of the Sale Order.**

Hazard Coal has not satisfied the substantive requirements for reconsideration of a ruling even if it was not estopped from proceeding.  Hazard Coal seeks to set aside the Sale Order under Federal Rule of Civil Procedure 59, incorporated by Federal Rule of Bankruptcy Procedure 9023. Courts have the discretion to grant a Civil Rule 59 motion "if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005).  A bankruptcy court may only vacate a sale order in "very limited circumstances in the exercise of its powers as a court of equity."  *In re Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir. 1985).  Typically, this requires evidence of fraud, mistake, or a compelling equitable argument that outweighs an interest in finality.  *Id*. at 549-550.

12

### 1. Justice and Equity Do Not Support Reconsideration of the Sale Order.

Hazard Coal seeks reconsideration because the "Sale Order approves the purported assumption and assignment of the expired and terminated Hazard Coal Lease." [Case No. 19-51200, ECF No. 595.] This argument does not fall into any of the enumerated categories for reconsideration. The Motion to Reconsider suggests only a claim of manifest injustice. But justice requires enforcement of the Sale Order, not alteration.

The facts and preceding discussion confirm Hazard Coal could have, and should have, pursued its arguments prior to approval of the sale to American Resources. Hazard Coal has not presented an excuse for its failure to timely object, attend the auction, or pursue its objection at the sale hearing. Equity does not favor a party that does not comply with court orders or act in a timely manner.

Further, any material change to the Sale Order would significantly affect the Debtors, American Resources, the other buyers, counterparties to other Assigned Contracts, and the creditors of the estates. The Sale Order determined that the purchasers, including American Resources, acted in good faith and were entitled to the protections in 11 U.S.C. § 363(m) if an appeal was taken. [*Id.*, ECF No. 534 at ¶ 5.] Further, the Sale Order specifically waived application of Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d). [*Id.* at ¶ H.] These bankruptcy rules impose a 14-day stay before a debtor may sell assets or assume and assign a contract "unless the court orders otherwise." FED. R. BANKR. PROC. 6004(h) and 6006(d).

The purpose of these rules is to allow an objecting party time to dispute an order and obtain a stay before the order becomes final. 10 COLLIER ON BANKRUPTCY ¶ 6004.11 (Richard Levin & Henry J. Sommer eds., 16th ed.). The facts of these cases justified the waiver and confirmed an immediate sale was required.

The Debtors' counsel began the September 24 sale hearing with a dire warning: the Debtors were out of money and could not survive beyond the end of the week. [Case No. 19-51200, ECF No. 524.] The testimony of Mr. Szlezinger verified counsel's assertion that the sales were required to give creditors the best hope of recovery. [*Id.*, ECF No. 518 at ¶¶ 19-20.] Further, the record confirms the lease counterparties, including Hazard Coal, had more than sufficient notice to raise any defenses before their rights were affected by a final order and sale. *See id.* at Part II.B; *see also Hower v. Molding Sys. Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) (termination of stay period in rules mooted right to appeal). Upsetting the sales now would immediately jeopardize the administrative solvency of the Debtors' estates, which remains precarious.

The Debtors have also consistently represented that the sale contemplated transfer of substantially all assets and liabilities. The Debtors sold their assets to three different purchasers, but each sale depended on completion of the other. Aborting the sale of substantially all assets to three purchasers solely to benefit a counterparty to a lease that has not acted with diligence is not equitable or fair.

Further, Hazard Coal did not act reasonably after the sale hearing concluded. Two days after the sale hearing and one day before the closing, Hazard Coal tried to stop the sale through a state court proceeding in violation of the automatic stay. Hazard Coal did not act in the Bankruptcy Court until October 9, well after the September 24 sale hearing and September 27 closing. Even then, it did not seek a stay or take any other action that could have slowed the progression of the already completed sale. There is no manifest injustice to Hazard Coal.

### 2. Any New Evidence Does Not Justify Upsetting the Status Quo.

Hazard Coal's brief suggests there is "new evidence concerning ARC's purchase of Debtor's assets that was impossible for Hazard Coal to obtain beforehand … ." [Case No. 19-51200, ECF No. 810 at ¶ 92.] This purported new evidence indicates American Resources was permit blocked at the time of the sale. The discussion at the December 21 hearing and the supplement filed on December 18, 2019 [*Id.*, ECF No. 859], suggest the Debtors knew American Resources was permit blocked and proceeded with the sale anyway. Counsel for the Debtors did not dispute this knowledge, but claimed it was also known by the Committee and other parties present at the auction. [*Id.*, ECF No. 873.]

The issue for this decision is not, however, whether the Debtors should have gone forward with the sale despite this knowledge. The question is whether Hazard Coal could have discovered the evidence in time to act. A party seeking reconsideration must show that it was excusably ignorant of the newly discovered evidence at the time of the hearing despite due diligence. *See In re Grady*, 417 B.R. 4, 7 (Bankr. W.D. Mich. 2009).

Hazard Coal recognized in its response that: "At the time of entry of the Sale Order, the AVS listed at least 14 cessation orders on American Resources related entities that were of public record and accessible to Debtors and Debtors' investment banker, Jeffries LLC ("Jeffries")." [*Id.*, ECF No. 810 at ¶ 37.] The "AVS" refers to the Application Violator System maintained by the United States Department of the Interior, Office of Surface Mining Reclamation and Enforcement ("OSMRE"). The AVS lists parties that may not obtain permits because they have not addressed previous violations of federal environmental laws and regulations.

15

The information on the AVS is publicly available.  There is no way Hazard Coal can make a plausible argument that it could not find this information in time to object when it did not take any substantive action until after the sale was complete and parties had changed their positions.

**III.     Conclusion.**

Hazard Coal may not collaterally attack the Sale Order with an argument that the Lease was not property of the estate.  *See HNRC Dissolution*, 549 B.R. at 480; *see also Regions Bank v. J.R. Oil Co., LLC*, 387 F.3d 721, 731 (8th Cir. 2004).  Hazard Coal ignored the requirements of the Bid Procedures Order and failed to participate in the sale process.  The actions of Hazard Coal alone prevented consideration of its arguments before the sale hearing, entry of the Sale Order, and closing of the sale.  Equity will not protect a movant that acts with such obvious disregard for the Court's authority and the rights of other parties.

Based on the foregoing, it is ORDERED that the Motion for Reconsideration is DENIED. It is further ORDERED the adversary proceeding is DISMISSED.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Friday, January 3, 2020**
**(grs)**