UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

IN RE

| | |
|---|---|
| **CAMBRIAN HOLDING COMPANY, INC., ET AL.** | **CASE NO. 19-51200** |
| **DEBTORS** | **JOINTLY ADMINISTERED** |

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO COMPEL**

On November 29, 2021, Key-Way, LLC ("Key-Way") filed a motion to compel [ECF No. 1889] compliance with the Order approving a sale of substantially all the jointly consolidated Debtors' assets to three different purchasers [ECF No. 534 ("Sale Order")].

The Sale Order allowed the Debtor Perry County Coal, LLC ("Debtor") to sell its assets to American Resources Corporation ("ARC") pursuant to the General Assignment and Assumption Agreement and Bill of Sale dated September 23, 2019. [*Id.*] The purchase price included the assumption of accrued and unpaid post-petition trade payables. [*Id.* at 158, 185.] ARC contemporaneously transferred the assets to its subsidiary, Perry County Resources, LLC ("PC Resources", and collectively, "ARC/PCR").

Key-Way performed post-petition, pre-sale services for the Debtor, and now seeks enforcement of the Sale Order to compel ARC/PCR to pay for those services as assumed trade payables. Key-Way seeks payment of $48,010.71 for coal refuse hauling services and $59,891.40 for services described as "extra work." ARC/PCR objects. [ECF No. 1934.]

An evidentiary hearing was held on March 8, 2022. [ECF No. 2007.] ARC/PCR conceded the obligations are assumed trade payables, to the extent proven. ARC/PCR also agreed Key-Way presented sufficient evidence to show it is entitled to payment of $48,010.71

1

for the coal refuse hauling.  But ARC/PCR contends that Key-Way did not prove it performed

the extra work.

Key-Way presented testimony and business records that confirmed it performed the extra

work billed to the Debtor consistent with its ordinary pre- and post-petition course of business

with the Debtor.  ARC/PCR did not introduce any evidence that contradicts Key-Way's proof.

The record confirms that ARC/PCR assumed post-petition, pre-sale trade payables of $59,891.40

related to the extra work.  ARC/PCR[1] must pay Key-Way $107,902.11 pursuant to the Sale

Order.

## I.    Facts.

The Debtor filed a chapter 11 petition on June 16, 2019.  [Case No. 19-51217, ECF No.

1.]  The case is jointly administered with the cases of Cambrian Holding Company, Inc., and

other affiliated debtors under Case No. 19-51200.  [*Id*., ECF No. 16.]

Key-Way began hauling coal for the Debtor in 2002 and entered a new Trucking Contract

on August 9, 2011.  [ECF No. 1960 at ¶¶ 3-4; ECF No. 1960-1.]  The Trucking Contract

provided the Debtor will pay $1.75 per refuse ton for coal hauled from the Messer Branch and

$1.87 per refuse ton for coal hauled from the Eversole Branch, subject to certain fuel

adjustments.  [*Id*.]  Key-Way also performed work not specifically addressed in the Trucking

Contract at the request of the Debtor during the same period – the extra work.

The Debtor owed Key-Way $1,077,649.02 for the coal hauling services and extra work

when the bankruptcy case was filed.  [ECF No. 1960 at ¶ 6; ECF No. 1960-2 (proof of claim).]

On August 6, 2019, Key-Way and the jointly consolidated Debtors executed a Critical Vendor

---

[1] Past disputes involving the obligations of ARC and PC Resources pursuant to the Sale Order and Assignment Agreement imposed joint and several liability for ARC and PCR by agreement.  This was discussed prior to the evidentiary hearing and ARC and PCR agreed that is appropriate for this case.

Agreement that acknowledged the prepetition debt and established terms for post-petition

services. [ECF No. 1960 at ¶¶ 7-9.] The Critical Vendor Agreement obligated Key-Way to

continue services for 90 days in exchange for a $.0.10 premium above the Trucking Contract

prices. [*Id.*]

Key-Way and the Debtor continued their relationship through (and a bit beyond) the sale

date. Key-Way continued to haul refuse coal and perform extra work at the Debtor's request,

just as it had since their relationship started. [*Id.* at ¶¶ 10, 15; *see also* ECF Nos. 1960-3 (coal

refuse invoice summary), 1960-4 (extra work summary), 1960-5 (unpaid coal refuse invoices);

1960-6 (extra work timesheets).] The Debtor initially paid for the services but ceased making

payments in late August and early September 2019, resulting in the balances due. [ECF No.

1960 at ¶¶ 12, 16.]

Key-Way did not immediately pursue collection of the amounts due from ARC/PCR

because the parties were negotiating a sale of Key-Way's equipment to ARC/PCR. [*Id.* at ¶ 25.]

After the negotiations failed, Key-Way sued in state court to recover its equipment from the mine

site. [*Id*. at ¶ 32.] Key-Way then moved to compel payment from ARC/PCR pursuant to the

Sale Order. [*Id.*]

## II.    Jurisdiction.

Key-Way seeks an order compelling ARC/PCR to comply with the Sale Order by paying

the trade payables it assumed in the sale. Both parties sought the assistance of this Court and

jurisdiction exists to enforce the Sale Order and compel ARC/PCR's compliance. *See Travelers

Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009); *Giese v. Cmty. Tr. Bank, Inc*., No. CIV. 14- 126-

GFVT, 2015 WL 1481618, at *5 (E.D. Ky. Mar. 31, 2015); *In re HNRC Dissolution Co.*, Case

No. 02-14261, 2018 WL 2970722, at *3 (Bankr. E.D. Ky. June 11, 2018).

**III.   Key-Way's Motion to Compel is Granted.**

   **A.      Key-Way is Entitled to Payment for its Post-Petition, Pre-Sale Services.**

   ARC/PCR agrees that the amounts sought by Key-Way are trade payables, and it is a

responsible for payment of $48,010.71 for the post-petition, pre-sale coal refuse hauling.  The

remaining issue is the right to payment for the extra work.

   Key-Way had the initial burden to prove it is entitled to payment from ARC/PCR for this

extra work.  *Wise Tech. Mfg., LLC v. Tree Care, Inc.*, No. 2019-CA-0941-MR, 2021 WL 71275, at

*3 (Ky. Ct. App. Jan. 8, 2021) (plaintiff bears burden of proof of breach of contract by a

preponderance of the evidence).  Key-Way met its burden.

   Key-Way introduced its business records to support the existence and consistency of the

business relationship with the Debtor.  Lackey testified that Key-Way has hauled coal refuse and

performed extra work for the Debtor since 2002.  Key-Way subcontracted the work to Kentucky

Mine Supply, LLC, a business Lackey owns jointly with Tim Parker.  Lackey explained that the

Debtor usually requested the additional work from Parker.   Lackey communicated with the

Debtor and visited the work sites when required, but he primarily relied on Parker to oversee the

day-to-day work.

   Parker filled out the timesheets used by Key-Way to request payment from the Debtor.

The timesheets were on Key-Way letterhead and included space for Parker to fill in the number

of hours each piece of Key-Way's equipment was used each day, and the total amounts due each

week based on pre-arranged hourly rates.  The timesheets did not describe the work performed.

But Lackey testified that he reviewed the timesheets prior to submitting them to the Debtor for

payment and he could generally determine the type of work based on the equipment used and his

conversations with Parker.  The fax number used to send the completed timesheets to the

Debtor's main offices for payment each week are reflected on the timesheets.  The Debtor paid

the invoices without objection until the week ending August 25, 2019.

Lackey's testimony that Key-Way performed the extra work is credible.  Key-Way's

business records corroborate his testimony.  But ARC/PCR contends Key-Way's evidence is

insufficient because Lackey does not have personal knowledge of the work performed.

Lackey has personal knowledge of Key-Way's ordinary course of business dealings with

the Debtor.  He testified that he dealt with representatives of the Debtor and reasonably relied on

Parker for further information.  Lackey showed sufficient knowledge to testify about the business

conducted between Key-Way and the Debtors.

ARC/PCR takes issue with Lackey's reliance on Key-Way's business records for details

about the extra work performed.  Lackey is the custodian of Key-Way's business records.  He

testified that the invoices were prepared at or near the time the work was performed by Parker,

who has personal knowledge of the work performed, and kept in the regular course of business.

Lackey is entitled to rely on his business records.  *See* FED. R. EVID. 803(6); *see also Harms v.*

*Bank of New York Mellon (In re Harms)*, 603 B.R. 19, 30 (B.A.P. 9th Cir. 2019) (testifying

witness must only demonstrate that he is familiar with, and understands, the record keeping

system).

Key-Way met its burden to show that it is entitled to payment for the extra work.  The

burden shifted to ARC/PCR to introduce evidence that contradicts Key-Way's claims.

ARC/PCR failed to produce any evidence that refutes Key-Way's right to payment.

ARC/PCR was in the best position to present evidence that might contradict Key-Way's

claims.  The Debtor's records were part of the assets purchased by ARC/PCR.  If the Debtor's

records conflict with Key-Way's records, then ARC/PCR could have, and should have,

introduced this information at trial.  ARC/PCR did not.

ARC/PCR also has access to the Debtor's employee records and could have used this

information to locate and subpoena testimony from employees who might confirm or deny the

work was performed.  But ARC/PCR offered only one witness, Tarlis Thompson, who admitted

he does not have any knowledge about the extra work performed by Key-Way prior to October

2019.  [ECF No. 1983-1.]

The Debtor's consistent payment for these services prior to the sale is also proof that

Key-Way performed the extra work through the sale date.  ARC/PCR criticized Key-Way for

failing to produce proof the Debtor approved the work performed, such as a signature by a

Debtor representative on the timesheets submitted by Key-Way.  But this information is more

likely in the Debtor's, now ARC/PCR's, files if it exists.  Further, ARC/PCR did not prove a

signature on the timesheet was the Debtor's standard practice.  This information might suggest

the Debtor had lax internal controls but has no relevance to the right to payment for the extra

work.

Key-Way is entitled to payment from ARC/PCR for its post-petition, pre-sale services.

**B.      Key-Way's Right to Payment is Not Precluded by the Doctrine of Laches.**

ARC/PCR argues Key-Way is not entitled to recover the amounts due under the doctrine

of laches because Key-Way waited too long to raise a claim for payment.  Laches requires proof

of (1) a lack of diligence by the party against whom the defense is asserted, and (2) prejudice to

the party asserting the defense.  *Stein v. Stubbs* (*In re Stubbs)*, 565 B.R. 115, 126 (B.A.P. 6th Cir.

2017).  ARC/PCR has not established either element.

Key-Way's claim against ARC/PCR is contractual.  The statute of limitations for an

action on a written contract is 15 years for a contract executed prior to July 15, 2014, and 10

years for a contract executed after July 15, 2014.  *See* K.R.S. § 413.090 (prior to July 15, 2014);

K.R.S. § 413.160 (after July 15, 2014).  Key-Way filed its motion to compel in November 2021,

slightly over two years after the Sale Order was approved, but within the time allowed to bring a

claim.  In the Sixth Circuit, a delay in pursuing an action is presumptively reasonable if the

analogous statute of limitations has not elapsed.  *Elvis Presley Enterprises, Inc. v. Elvisly Yours,*

*Inc.*, 936 F.2d 889, 894 (6th Cir. 1991); *Burgher v. Verizon S., Inc.*, No. 5:14-CV-10-JMH, 2014

WL 4063824, at *4 (E.D. Ky. Aug. 15, 2014).

Key-Way also delayed action because the parties were negotiating a transaction that

would have avoided the need for legal action.  This was a reasonable business decision and

ARC/PCR did not present any evidence showing prejudice from the delay.  ARC/PCR suggested

the delay impeded its defense because the mine closed in December 2019 and its employees have

moved on to other jobs.  But ARC/PCR owns the Debtor's business records and could have used

those records to locate former employees or disprove the amount due.  *See supra* at Part III.A.

The doctrine of laches does not apply.

**C.     Key-Way is Not Entitled to an Award of Interest and Attorney Fees.**

Key-Way requests an award of interest and attorney fees.  Interest is generally awarded

on a judgment.  *See, e.g., Heartland Materials, Inc. v. Warren Paving, Inc*, 384 F. Supp. 3d 786,

799 (W.D. Ky. 2019) (discussing pre-judgment and post-judgment interest under Kentucky law).

An order compelling compliance with the Sale Order is not a judgment.

Further, parties are responsible for their own attorney fees absent a statute or enforceable

contract.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257 (1975); *State of*

*Ohio v. United States Dep't of Educ.*, 986 F.3d 618, 631 (6th Cir. 2021).  Key-Way has not

provided a basis for the application of either exception.  Key-Way's request for an award of

interest and attorney fees is denied.

IV.    **Conclusion.**

Based on the foregoing, it is ORDERED that:

(1)  Key-Way's Motion to Compel [ECF No. 1889] is GRANTED; and

(2) ARC/PCR shall pay post-petition trade payables owed to Key-Way for work

performed during the post-petition, pre-sale period in the amount of $107,902.11 pursuant to the

Sale Order entered on September 25, 2019.

_____

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and
electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Gregory R. Schaaf*
**Bankruptcy Judge**
**Dated: Tuesday, March 22, 2022**
**(grs)**